ACCEPTED
13-14-00725-cv
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/6/2015 5:28:58 PM
CECILE FOY GSANGER
CLERK

No. 13-14-00725-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/6/2015 5:28:58 PM
CECILE FOY GSANGER
Clerk

IN THE COURT OF APPEALS
FOR THE
THIRTEENTH COURT OF APPEALS DISTRICT OF TEXAS

DOS REPUBLICAS COAL PARTNERSHIP,
APPELLANT,

— VERSUS—

DAVID SAUCEDO AS FLOODPLAIN ADMINISTRATOR AND COUNTY JUDGE OF THE
MAVERICK COUNTY COMMISSIONERS COURT AND THE MAVERICK COUNTY
COMMISSIONERS COURT,
APPELLEES.

## BRIEF OF APPELLEES

ALFONSO NEVAREZ
STATE BAR NO. 24005376
NEVAREZ LAW GROUP, P.C.
780 EAST RIO GRANDE STREET
EAGLE PASS, TEXAS 78852
(830) 776-7003– PHONE
(830) 776-7004– FAX
ANC@NEVAREZLAWGROUP.COM

BETH WATKINS
STATE BAR NO. 24037675
SHANNON K. DUNN
STATE BAR NO. 24074162
LAW OFFICE OF BETH WATKINS
926 CHULIE DRIVE
SAN ANTONIO, TEXAS 78216
(210) 225-6666– PHONE
(210) 225-2300– FAX
BETH.WATKINS@WATKINSAPPEALS.COM
SHANNON.DUNN@WATKINSAPPEALS.COM

ATTORNEYS FOR APPELLEES
ORAL ARGUMENT CONDITIONALLY REQUESTED

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . vii

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. JUDGE SAUCEDO DID NOT FAIL TO PERFORM ANY MINISTERIAL DUTIES
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    Judge Saucedo Did Not Have A Ministerial Duty To Approve
        DRCP's Permit Because The Decision To Approve Or Deny A
        Permit Is A Textbook Example Of A Discretionary Decision . . . . 8

    B.    DRCP Ignores That Judge Saucedo Complied With His Duty To
        Consider The Entire Ordinance . . . . . . . . . . . . . . . . . . . . . . . 10

III. JUDGE SAUCEDO DID NOT ABUSE HIS DISCRETION BY DENYING THE
PERMIT BECAUSE THE EVIDENCE SUPPORTS A CONCLUSION THAT DRCP
DID NOT EVEN SATISFY THE TEN FACTORS ON WHICH ITS APPLICATION
RELIES, LET ALONE THE REST OF THE ORDINANCE . . . . . . . . . . . . . . . . 12

    A.    Padilla's Testimony Demonstrated That His Report's Analysis
        Was Flawed Because It Did Not Consider Numerous Factors That
        Are Relevant To The Purpose Of The Ordinance . . . . . . . . . . . . 13

1.    Padilla's testimony supports a conclusion that DRCP's application did not satisfy factor (a) of the Ordinance  .... 13

2.    Padilla's testimony revealed that, at best, DRCP's application only raises a question of fact as to factor (b) of the Ordinance ...................................... 15

3.    Padilla's testimony revealed flaws in his report's conclusions about factor (c) of the Ordinance ........... 16

4.    Padilla's report did not even consider all of the elements required to satisfy factor (d) of the Ordinance ......... 18

5.    One expert's *ipse dixit*, standing alone, is not enough to prove Judge Saucedo abused his discretion as a matter of law ........................................ 19

B.    Judge Saucedo Considered DRCP's Application In Light Of The Entire Ordinance—As The Ordinance Itself Required Him To Do—And Did Not Consider Any Irrelevant Factors ........... 20

1.    Judge Saucedo considered DRCP's application ......... 20

2.    Judge Saucedo considered all of the relevant factors—*i.e.,* the Ordinance as a whole—before he denied the permit ... 21

3.    All of the factors DRCP describe as "irrelevant" touch on issues the Ordinance required Judge Saucedo to consider   . 23

      a.    The quality of the floodwater flowing from the proposed mine relates to the dangers the mine could pose to the citizens of Maverick County, and Judge Saucedo's recognition of that risk does not conflict with TCEQ's permitting power ................. 23

b. Even DRCP's own expert conceded that "public health and safety"—a factor the Ordinance required Judge Saucedo to consider—could broadly be called "the best interest of the county" .................. 25

c. Judge Saucedo did not consider any surface coal mining regulations except to the extent that he concluded DRCP's proposed sedimentation ponds were not sufficient to adequately protect the citizens and property of Maverick County ............... 27

d. Judge Saucedo's personal experiences with flooding in Maverick County are relevant to the question of whether DRCP's proposed mine satisfies the requirements of the Ordinance ................. 29

4. The fact that the previous floodplain administrator awarded DRRC a permit in 1998 has no relevance to DRCP's 2011 and 2013 applications because the evidence showed a change in relevant circumstances between 1998 and 2013 ......................................... 30

C. Judge Saucedo Did Not Abuse His Discretion By Denying DRCP's Permit Without A Written Explanation—But Even If He Had, DRCP's Only Remedy Is A Remand To Judge Saucedo To Obtain That Explanation ............................... 31

IV. DRCP RECEIVED THE PROCESS IT WAS DUE FROM JUDGE SAUCEDO AND IN THE TRIAL COURT ..................................... 35

CONCLUSION AND PRAYER ......................................... 37

CERTIFICATE OF SERVICE .......................................... 39

CERTIFICATE OF COMPLIANCE ....................................... 40

# INDEX OF AUTHORITIES

**CASES**                                                                                          **PAGE**

*Amtel Commc'ns, Inc. v. Public Utility Comm'n*, 687 S.W.2d 95 (Tex.
    App.–Austin 1985, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 34

*Anderson v. City of Seven Points*, 806 S.W.2d 791 (Tex. 1991) . . . . . . . . . . . . 12

*Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417 (Tex. 2004) . . . . . . 9, 12

*Bd. of Adjustment for San Antonio v. Kennedy*, 410 S.W.3d 31 (Tex. App.–San
    Antonio 2013, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Christopher Columbus St. Mkt. LLC v. Zoning Bd. of Adjustments of the City
    of Galveston*, 302 S.W.3d 408 (Tex. App.–Houston [14th Dist.] 2009, no
    pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*City of Corpus Christi v. Unitarian Church of Corpus Christi*, 436 S.W.2d 923
    (Tex. Civ. App.–Corpus Christi 1968, writ ref'd n.r.e.) . . . . . . . . . . . . . . 8

*City of Dallas v. Saucedo-Falls*, 268 S.W.3d 653 (Tex. App.–Dallas 2008, pet.
    denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*City of El Paso v. El Paso Elec. Co.*, 851 S.W.2d 896 (Tex. App.–Austin 1993,
    writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Comm'r of Gen. Land Office v. Smith*, 5 Tex. 471 (1849) . . . . . . . . . . . . . . . . 9

*Comm'rs Court v. Agan*, 940 S.W.2d 77 (Tex. 1997) . . . . . . . . . . . . . . . . . . 7, 16

*Ector Cnty. v. Stringer*, 843 S.W.2d 477 (Tex. 1992) . . . . . . . . . . . . . . . . . . . 7

*Ford Motor Co. v. Ridgway*, 135 S.W.3d 598 (Tex. 2004) . . . . . . . . . . . . . . . 20

*Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547 (Tex. 1981) . . . . . . 25, 28

*In re Bailey*, 975 S.W.2d 430 (Tex. App.–Waco 1998, no pet.) . . . . . . . . . . . . 9

*Madden v. Tex. Bd. of Chiropractic Exam'rs*, 663 S.W.2d 622 (Tex. App.–Austin 1983, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*McMahon v. Zimmerman*, 433 S.W.3d 680 (Tex. App.–Houston [1st Dist.] 2014, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Morgan Drive Away, Inc. v. R.R. Comm'n of Tex.*, 498 S.W.2d 147 (Tex. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Tex. Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446 (Tex. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32, 33

*Vondy v. Comm'rs Court of Uvalde Cnty.*, 620 S.W.2d 104 (Tex. 1981) . . . . . . 7

*Westergren v. Jennings*, 441 S.W.3d 670 (Tex. App.–Houston [1st Dist.] 2014, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 29

## STATUTES AND RULES

Tex. Gov't Code Ann. § 311.021 (Lexis 2015) . . . . . . . . . . . . . . . . . . . . . . . . 24

Tex. Gov't Code Ann. § 2001.003 (Lexis 2015) . . . . . . . . . . . . . . . . . . . . . . . 31

Tex. Water Code Ann. § 16.312 (Lexis 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex. Water Code Ann. § 16.318 (Lexis 2015) . . . . . . . . . . . . . . . . . . . . . . 24, 32

Tex. Water Code Ann. § 26.011 (Lexis 2015) . . . . . . . . . . . . . . . . . . . . . . . . 24

## SECONDARY AUTHORITIES

FEMA.gov, Flood Zones, https://www.fema.gov/flood-zones (last visited June 25, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

John Schwartz, *Scientists Warn to Expect More Weather Extremes*, N.Y. Times, May 27, 2015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

W. Wendell Hall et al., *Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# STATEMENT REGARDING ORAL ARGUMENT

According to DRCP, the questions at issue in this case turn on "[w]hether local political subdivisions may thwart statewide permitting regimes governing energy extraction." Br. of Appellant at xv. This is a misleading description of the issues at stake in this case. DRCP ignores that the Texas Legislature has given local governments the power to establish the exact kind of permitting regime that Maverick County established here. Tex. Water Code Ann. § 16.318 (Lexis 2015); 2 CR 886 (noting that Maverick County established its floodplain ordinance under the auspices of section 16.318).

In other words, despite DRCP's "the sky is falling" insistence to the contrary, this case does not "ha[ve] the potential of rendering state agency permitting meaningless[.]" Br. of Appellant at xv. Instead, this case simply turns on whether Appellees properly interpreted and applied the Maverick County ordinance at issue—an ordinance the Texas Legislature specifically gave the County power to administer. There are no complicated questions of law raised by this appeal, and the factual record was well-developed below. For this reason, Appellees do not believe oral argument will assist the Court in resolving this dispute. However, if the Court decides to hear oral argument, Appellees will attend and present argument.

# ISSUE PRESENTED

I. The evidence shows Judge Saucedo denied DRCP's requested permit based on his interpretation and application of a twenty-one page Ordinance that necessarily required him to exercise discretion. **Did the trial court correctly determine that Judge Saucedo did not have a ministerial duty to grant DRCP its requested permit?**

II. The evidence shows Judge Saucedo denied DRCP's requested permit based on his determination that the permit application did not adequately satisfy the Ordinance as a whole. **Did the trial court correctly determine that Judge Saucedo did not abuse his discretion by refusing to grant DRCP's permit?**

III. DRCP submitted two lengthy applications in support of its requested permit. It has never alleged that it lacked an adequate opportunity to present its evidence. Furthermore, it never requested a hearing before Judge Saucedo, and the Ordinance does not require him to hold one. Finally, after Judge Saucedo denied its requested permit, DRCP received what even it concedes was a "full trial on the merits" in the trial court. **Did DRCP suffer a deprivation of its due process rights, and if so, has it already received the only remedy to which it is entitled for that alleged deprivation?**

In 1996, Maverick County adopted a Flood Damage Prevention Ordinance ("the Ordinance"), the stated goal of which is "to promote the public health, safety and general welfare and to minimize public and private losses due to flood conditions in specified areas[.]" 2 CR 886.[1] The County adopted the Ordinance with the blessing of the Texas Legislature, which wanted to give counties and other local governments the authority to "adopt and promulgate reasonable rules which are necessary for the orderly effectuation of the" National Flood Insurance Program. Tex. Water Code § 16.318. In doing so, the Legislature recognized the importance of "promoting the public interest by providing appropriate protection against the perils of flood losses and in encouraging sound land use by minimizing exposure of property[2] to flood losses." Tex. Water Code Ann. § 16.312 (Lexis 2015).

---

[1] Appellees will cite the five-volume Clerk's Record as "[volume number] CR [page number]," using the page numbers that appear on the lower left-hand corner of the Clerk's Record. Appellants will cite the single-volume Reporter's Record as "RR [page number]" and the exhibits presented at trial as "Trial Exh. [number]."

[2] In its brief, DRCP has italicized the word "property" as it is used in this statute, presumably to imply that the Legislature was only concerned about property damage and did not intend to give local governments authority to consider the health and safety issues mentioned in the Ordinance. *Compare* Br. of Appellant at 3 (alleging that Maverick County adopted the Ordinance "to prevent *property* loss in the floodplain") (emphasis added), *and* Br. of Appellant at 56 ("The purpose of the Ordinance is to prevent *property* losses") (emphasis added), *with* Tex. Water Code § 16.312 (recognizing "the perils of flood losses"), *and* 2 CR 886 (identifying the need to "[p]rotect human life and health" as one purpose of the Ordinance). Nevertheless, DRCP concedes that the Ordinance "is in accord" with the Legislature's mandate. Br. of Appellant at 4.

The Ordinance accomplishes its goals by, *inter alia*, "[r]estrict[ing] and prohibit[ing] uses that are dangerous to **<u>health</u>**, **<u>safety</u>** and property in times of flood," "[c]ontrol[ling] the alteration of natural floodplains, stream channels, and natural protective barriers," and "[c]ontrol[ling] filling, grading, dredging and other development which may increase flood damage." 1 CR 296 (emphasis added). To this end, the Ordinance creates a permitting regime that must be utilized by those who wish to build in a floodplain. 2 CR 894, 896-99. Under this permitting regime, "[a]pproval or denial of a Development Permit . . . shall be based on **all** of the provisions of this ordinance," as well as ten "relevant factors." 2 CR 897 (emphasis added). The Ordinance vests the responsibility for making permitting decisions in a county floodplain administrator, a job it assigns to the Maverick County Judge. 2 CR 896. That position is currently held by one of the Appellees[3] in this case, Maverick County Judge David Saucedo. Trial Exh. 10 at 6.

In October of 1994, Dos Republicas Resources Company ("DRRC")—the predecessor to Appellant Dos Republicas Coal Partnership ("DRCP")—obtained a permit from the Railroad Commission of Texas to operate an open pit coal mine in Maverick County near the city of Eagle Pass. 2 CR 852; Br. of Appellant at 2. If the

---

[3]The second appellee in this case is the Maverick County Commissioners Court. Br. of Appellant at iii. However, as Appellees' trial counsel pointed out to the trial court, the Maverick County Commissioners Court did not take any actions related to the denial of DRCP's requested permit. RR 94.

Railroad Commission permit—part of what DRCP refers to as "state-required permits"—were all that was required, DRRC could have begun mining then. *See* Br. of Appellant at 2 ("To accomplish its goal [of mining in Maverick County], DRCP obtained all state-required permits to operate its proposed mine."). But the Railroad Commission permit, standing alone, was not sufficient to allow DRRC to mine its land, because a substantial portion of the mine permit area is located in a parcel the Federal Emergency Management Agency ("FEMA") has designated as a Special Flood Hazard Area.[4] 2 CR 853; 2 CR 882. As a result, DRRC's use of the property was subject to the Ordinance. 2 CR 853; 2 CR 882; 2 CR 894 ("The ordinance shall apply to all areas of special flood hazard within the jurisdiction of Maverick County."). DRRC therefore applied for and received a floodplain development permit from the previous Maverick County floodplain administrator in 1998. 1 CR 478.

In 2009, DRRC transferred its Railroad Commission mine permit to DRCP.[5] 2 CR 852; Br. of Appellant at 2. After it obtained the mining permit, DRCP made some changes to the mine plan for the portion of the property that lay within the flood zone

---

[4]FEMA defines Special Flood Hazard Areas—which are more commonly known as flood zones or floodplains—as "those that will be inundated by the flood event having a 1-percent chance of being equaled or exceeded in any given year. The 1-percent annual chance flood is also referred to as the base flood or 100-year flood." 2 CR 853 (internal quotation marks omitted); 2 CR 884; *see also* FEMA.gov, Flood Zones, https://www.fema.gov/flood-zones (last visited June 25, 2015).

[5]DRCP received an additional permit to renew, revise, and expand the existing 1994 permit in January of 2013. 2 CR 852-53.

and, in 2011, applied for a new county floodplain permit to reflect these changes. 2 CR 853; Br. of Appellant at 2; *see also* 1 CR 171-258 (DRCP's 2011 floodplain development permit application). DRCP's plan for the site included the diversion of a unnamed tributary of Elm Creek and the construction of several sedimentation ponds. 1 CR 171; 1 CR 174; 1 CR 296 (the Ordinance is intended, *inter alia*, to "[c]ontrol the alteration of natural floodplains, stream channels, and natural protective barriers").

DRCP correctly notes that Judge Saucedo did not act on its 2011 permit at that time. Br. of Appellant at 6; *but see generally* 2 CR 886-905 (the Ordinance does not require the floodplain administrator to act on a permit application within any certain period of time). Even if he had, however, DRCP still would have had to file an additional permit application based on its 2013 discovery that FEMA had issued a new Digital Flood Insurance Rate Map ("DFIRM") for the area. 2 CR 854; RR 35. As a result, after FEMA issued the new DFIRM, DRCP filed a supplemental floodplain development permit application. 2 CR 854; 1 CR 261-452; *see also* 5 CR 3207 (trial court finding of fact number 5).

In reviewing DRCP's floodplain development permit application, Judge Saucedo considered all of the provisions and factors listed in the Ordinance. Trial Exh. 10 at 27. In particular, he took note of the fact that the flood zones within the permit

area are located approximately two-and-a-half miles from the Elm Creek subdivision, which is home to several hundred people and has seen extreme levels of flooding in recent years. 2 CR 864; *see also* 2 CR 1036-38 (pictures of flooding near Elm Creek in 2004, 2013, and 2014). He also relied on his personal experience with and knowledge of significant flooding in the area, noting that this flooding was a "big concern" for him. Trial Exh. 10 at 20-22. He did not consider any factors that were not listed in the ordinance. Trial Exh. 10 at 27. Based on his consideration of the relevant factors and provisions—particularly factors (a), (b), and (c)—Judge Saucedo decided to deny DRCP's requested permit. Trial Exh. 10 at 22; 1 CR 454.

After receiving Judge Saucedo's denial, DRCP filed a petition for writ of mandamus in the 293rd Judicial District Court of Maverick County ("the trial court") seeking an order compelling Judge Saucedo to grant the permit. 1 CR 4; 1 CR 41. After a bench trial that even DRCP concedes constituted a "full trial on the merits," the trial court denied DRCP's request for mandamus relief and issued findings of fact and conclusions of law that are consistent with Judge Saucedo's decision to deny DRCP's permit. Br. of Appellant at xiv; 5 CR 2940; 5 CR 3207-12. This appeal followed. 5 CR 3179.

## SUMMARY OF THE ARGUMENT

Throughout its brief, DRCP relies on a single assumption: that its permit application complied with the Ordinance and Judge Saucedo was therefore required to grant the requested permit. This assumption is based primarily on its insistence that Judge Saucedo (a) only had discretion to consider ten factors listed on two pages of the twenty-one-page Ordinance and (b) either failed to considered some of those factors or improperly considered other "irrelevant" factors.

But both Judge Saucedo and the trial court concluded that DRCP's application did not demonstrate that **all** the factors and provisions set forth in the Ordinance—the standard that actually applies under the Ordinance's plain terms—supported granting the requested permit. Furthermore, the trial court concluded that Judge Saucedo considered all of the relevant provisions and factors and did not consider any irrelevant factors. Because there is some evidence to support this conclusion, the standard of review requires this Court to affirm the trial court's refusal to grant DRCP's petition for writ of mandamus.

## ARGUMENT AND AUTHORITIES

### I. STANDARD OF REVIEW

"An appeal directed toward demonstrating an abuse of discretion is one of the tougher appellate propositions." W. Wendell Hall et al., *Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3, 16 (2010) (internal quotation marks omitted). In order to overcome this barrier in the trial court, DRCP needed to demonstrate that Judge Saucedo either (a) refused to perform a purely ministerial act or (b) entered a ruling that was arbitrary, capricious, or unsupported by substantial evidence. *Ector Cnty. v. Stringer*, 843 S.W.2d 477, 479 (Tex. 1992); *Vondy v. Comm'rs Court of Uvalde Cnty.*, 620 S.W.2d 104, 109 (Tex. 1981).

However, in reviewing Judge Saucedo's decision for abuse of discretion, the trial court had no power to substitute its own judgment and discretion for Judge Saucedo's. *See Comm'rs Court v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997). As a result, in order to prevail in this Court, DRCP must demonstrate that the trial court's conclusion that Judge Saucedo (a) did not have a ministerial duty to issue the requested permit and (b) did not abuse his discretion by refusing to do so was wrong as a matter of law. *Cf. Christopher Columbus St. Mkt. LLC v. Zoning Bd. of Adjustments of the City of Galveston*, 302 S.W.3d 408, 416 (Tex. App.–Houston [14th Dist.] 2009, no pet.) ("A party attacking the legality of the Zoning Board's order must

establish that the Zoning Board could have reached but one decision, and not the decision it made."). "As long as the record contains some evidence of substantive and probative character to justify" Judge Saucedo's decision, this Court must affirm the trial court's judgment. *Id.*; *see also Bd. of Adjustment for San Antonio v. Kennedy*, 410 S.W.3d 31, 35 (Tex. App.–San Antonio 2013, pet. denied) ("With regard to factual matters, the reviewing court must not put itself in the position of the board and substitute its findings for those of the board, even if the overwhelming preponderance of the evidence is against the board's decision.").

## II. JUDGE SAUCEDO DID NOT FAIL TO PERFORM ANY MINISTERIAL DUTIES.

### A. Judge Saucedo Did Not Have A Ministerial Duty To Approve DRCP's Permit Because The Decision To Approve Or Deny A Permit Is A Textbook Example Of A Discretionary Decision.

DRCP correctly notes that this Court has held that "'[w]here the [applicant] has done all that the statutes and law demands, the authorized granting of a building permit becomes a mere ministerial duty.'" Br. of Appellant at 21 (quoting *City of Corpus Christi v. Unitarian Church of Corpus Christi*, 436 S.W.2d 923, 927 (Tex. Civ. App.–Corpus Christi 1968, writ ref'd n.r.e.). However, as even DRCP acknowledges in its brief, an act is not ministerial unless "'the law clearly spells out the duty to be performed by the official with sufficient certainty that **nothing is left**

**to the exercise of discretion**.'" Br. of Appellant at 20 (quoting *In re Bailey*, 975 S.W.2d 430, 432 (Tex. App.–Waco 1998, no pet.)) (emphasis added).

DRCP asks this Court to ignore that deciding the question of whether it "has done all that the statutes and law demands" required Judge Saucedo to consider the Ordinance's twenty-one pages' worth of provisions and factors and decide whether DRCP's permit application—which is itself hundreds of pages long—met those requirements. *See generally* 2 CR 886-905; *see also* 1 CR 171-258 (DRCP's 2011 application); 1 CR 261-452 (DRCP's 2013 application). The Ordinance required Judge Saucedo to exercise discretion almost by definition. *See, e.g.*, 2 CR 897-98 (listing factors for Judge Saucedo's consideration, but also providing that he must consider the Ordinance as a whole). This is because if an act—here, the decision about whether to issue DRCP's requested permit—"involves personal deliberation, decision, and judgment . . . it is discretionary." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004); *see also Comm'r of Gen. Land Office v. Smith*, 5 Tex. 471, 479 (1849) ("[W]here the act to be done involves the exercise of discretion or judgment in determining whether the duty exists, it is not to be deemed merely ministerial."). Because the Ordinance required Judge Saucedo to exercise discretion as a matter of law, he did not have a ministerial duty to approve DRCP's permit application. *Compare* 2 CR 886-905, *with Ballantyne*, 144 S.W.3d at 425.

**B. DRCP Ignores That Judge Saucedo Complied With His Duty To Consider The Entire Ordinance.**

DRCP has attempted to show that Judge Saucedo failed to perform a ministerial duty because—at least according to DRCP—he did not consider "a list of ten factors the Floodplain Administrator must consider in evaluating a permit application." Br. of Appellant at 22; *but see* Trial Exh. 10 at 27 (Judge Saucedo testified that he did consider the required factors).[6] It is true, as DRCP argues, that the Ordinance required Judge Saucedo to consider ten specific factors listed in the Ordinance. *See* Br. of Appellant at 22; 2 CR 897-98. However, DRCP's insistence that "when those [ten] factors . . . are met, only the ministerial duty of issuing the permit remains" is incorrect. Br. of Appellant at 23. This is because the Ordinance specifically provides that "[a]pproval or denial of a Development Permit . . . shall be based on **all** of the provisions of this ordinance **and** the following [ten] relevant factors." 2 CR 897 (emphasis added).

---

[6]DRCP insists that Judge Saucedo "submitted no evidence and offered no witnesses at trial." Br. of Appellant at 10. While this is superficially true, it is also misleading. DRCP itself entered the transcript of Judge Saucedo's deposition into evidence at trial. *See generally* Trial Exh. 10. In that deposition, Judge Saucedo explained exactly why he denied DRCP's requested permit. *Id.* at 20; *Id.* at 22 (specifically referencing factors (a), (b), and (c) as a basis for his decision). The trial court credited Judge Saucedo's explanation. 5 CR 3208-10. Furthermore, as explained more fully below, Judge Saucedo's trial counsel exposed serious weaknesses in DRCP's evidence on cross examination. Finally, DRCP's insistence that "Appellees failed to even introduce any evidence supporting [Judge Saucedo's] alleged personal experiences" with local flooding is false because Judge Saucedo's testimony **is** evidence. *Compare* Br. of Appellant at 63 n.4, *with Westergren v. Jennings*, 441 S.W.3d 670, 682 (Tex. App.–Houston [1st Dist.] 2014, no pet.).

DRCP's interpretation wholly ignores the conjunctive "and" that instructed Judge Saucedo to consider the **entire** Ordinance—including the provisions intended to "promote the public health, safety and general welfare and to minimize public and private losses due to flood conditions" and "[p]rotect human life and health"—not just the ten factors DRCP repeatedly presents as the alpha and the omega of this dispute. *Compare* 2 CR 897, *with* Br. of Appellant at 11 (denoting the ten listed factors as "exclusive"), *and* Br. of Appellant at 49 (same), *and* Br. of Appellant at 54 (same), *and* Br. of Appellant at 59 (same), *and* Br. of Appellant at 61 (same), *and* Br. of Appellant at 63 (same). In fact, DRCP has argued at length that it would have been an abuse of discretion for Judge Saucedo to rely on any factors other than the ten listed factors, **even though the Ordinance itself commands him to do just that**. *Compare* 2 CR 897, *with* Br. of Appellant at 11, *and* Br. of Appellant at 49, *and* Br. of Appellant at 54, *and* Br. of Appellant at 59, *and* Br. of Appellant at 61, *and* Br. of Appellant at 63.

In considering all the factors and provisions set out in the Ordinance—not just the ones DRCP emphasized in its application and its brief in this Court—Judge Saucedo used his discretion to conclude that DRCP did not meet its required burden. *See, e.g.*, Trial Exh. 10 at 20, 23-24, 32. Because the Ordinance gave him the discretion to do so, he did not have a ministerial duty to grant DRCP's requested

permit. *See Ballantyne*, 144 S.W.3d at 425 (identifying "deliberation, judgment, and decision" as "the very hallmarks of discretion"); 2 CR 896 (providing that reviewing, approving, and denying permit applications like DRCP's is part of Judge Saucedo's duties and responsibilities as floodplain administrator). As a result, this Court should affirm the trial court's conclusion that Judge Saucedo did not have a ministerial duty to grant DRCP's requested permit. *See Ballantyne*, 144 S.W.3d at 425.

III.  **JUDGE SAUCEDO DID NOT ABUSE HIS DISCRETION BY DENYING THE PERMIT BECAUSE THE EVIDENCE SUPPORTS A CONCLUSION THAT DRCP DID NOT EVEN SATISFY THE TEN FACTORS ON WHICH ITS APPLICATION RELIES, LET ALONE THE REST OF THE ORDINANCE.**

It is black-letter Texas law that "a writ of mandamus will not issue to compel a public official to perform an act which involves an exercise of discretion [except] to correct a clear abuse of discretion." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). As noted above, Judge Saucedo's approval or denial of DRCP's permit application was a discretionary act. *See Ballantyne*, 144 S.W.3d at 425. As a result, in order to prevail in the trial court, DRCP needed to demonstrate that Judge Saucedo committed a clear and unmistakable abuse of discretion by refusing to grant the requested permit. *See Anderson*, 806 S.W.2d at 793. Because it failed to do so, however, this Court should affirm the trial court's judgment. *Cf. Christopher Columbus St. Mkt.*, 302 S.W.3d at 416.

**A.  The Trial Court Heard Evidence That Paul Padilla's Analysis Was Flawed Because It Did Not Consider Numerous Factors That Are Relevant To The Purpose Of The Ordinance.**

DRCP insists that its expert, Paul Padilla, presented the trial court with an "unchallenged, expert opinion" that DRCP's application satisfied the ten factors in the Ordinance as a matter of law. Br. of Appellant at 24-25. As noted above, this contention ignores that the ten factors on which DRCP relies so heavily are not the only factors the Ordinance commanded Judge Saucedo to consider. 2 CR 897. But even if they were, DRCP is wrong that Padilla's opinions entitle DRCP to mandamus relief because his own trial testimony demonstrates that he did not consider evidence that was relevant to at least four of the ten factors listed in the Ordinance.

1.  Padilla's testimony supports a conclusion that DRCP's application did not satisfy factor (a) of the Ordinance.

On its very first page, the Ordinance provides that one of its primary purposes is to "[p]rotect human life and health." 2 CR 886. This purpose is consistent with factor (a) of the Ordinance, which directs Judge Saucedo to consider "[t]he danger to life and property due to flooding or erosion damage" related to DRCP's proposed use of the floodplain. 2 CR 897. In his report's analysis of factor (a), Padilla concluded that "[s]ince the existing flood waters are being channelized into proposed sedimentation ponds there is a decreased risk of damage caused by flooding or

erosion." *Compare* 2 CR 897 (the Ordinance), *with* 1 CR 268 (Padilla's report).

In his trial testimony, however, Padilla conceded that he did not consider the effect that back-to-back storms might have on the capacity of the sedimentation ponds and their potential to overflow. RR 56. Instead, his models only considered the effect of a single storm on the ponds' capacity and overflow. *Id.* Furthermore, Padilla testified that he was not aware that in June of 2013—just a few months before he compiled his report—Maverick County received 17 inches of rain in 10 hours, an amount well in excess of both the "25-year storm" and the "100-year storm" on which Padilla's analysis relied. RR 66; 1 CR 112-20 (25-year storm was 7.13 inches in 24 hours); RR 55 (100-year storm was 11.9 inches in 24 hours); *see also* 1 CR 261 (Padilla sent Judge Saucedo his report on September 4, 2013). Finally, Padilla admitted that he did not have any opinion or expertise on contaminants that might be deposited into the sedimentation ponds and eventually carried downstream from DRCP's mine if the ponds were to overflow. RR 61.

In other words, Padilla's own testimony demonstrated the fallibility of his conclusion that the proposed sedimentation ponds would lead to a decreased risk of danger to life and property due to flooding. *Compare* 2 CR 897 (the Ordinance), *with* 1 CR 268 (Padilla's report), and RR 55, *and* RR 66, and RR 56. This evidence does not support granting DRCP's requested permit and therefore cannot demonstrate that

"[Judge Saucedo] could have reached but one decision, and not the decision [he] made." *Christopher Columbus St. Mkt.*, 302 S.W.3d at 416. For this reason, the evidence supports the trial court's conclusion that Judge Saucedo did not abuse his discretion by resolving factor (a) against DRCP's requested permit. *See id.*

2. Padilla's testimony revealed that, at best, DRCP's application only raises a question of fact as to factor (b) of the Ordinance.

With regard to factor (b) of the Ordinance—"[t]he susceptibility of the proposed facility and its contents to flood damage and the effect of such damage on the individual owner"—Padilla opined that "[b]ased on the channel HEC-RAS models, the 100-year flood waters will primarily be contained within the channels and there is very minimal risk of property damage or other damage to the property owner." *Compare* 2 CR 897 (the Ordinance), *with* 1 CR 268 (Padilla's report).

As noted above, however, Padilla's projections failed to take into account the fact that Maverick County experienced rainfall far in excess of a 100-year storm just three months before Padilla submitted his report. RR 55; RR 66. And because Padilla did not consider the fact that Maverick County **actually did** experience a rain event in excess of a 100-year storm, he did not offer either Judge Saucedo or the trial court any reason to believe that his projections were valid under those circumstances. *Compare* RR 55, *and* RR 66, *with* 1 CR 268. For this reason, Padilla's report at best

-15-

raises a fact question as to factor (b)—a fact question that Judge Saucedo was within his discretion to resolve against DRCP's requested permit. *See id.*; *Agan*, 940 S.W.2d at 79 ("[I]n reviewing a Commissioners Court judgment for abuse of discretion, the district court has no right to substitute its own judgment and discretion for that of the Commissioners Court judgment.").

> 3. Padilla's testimony revealed flaws in his report's conclusions about factor (c) of the Ordinance.

With regard to factor (c) of the Ordinance—"[t]he danger that materials may be swept onto other lands to the injury of others"—Padilla's report contends that "[s]ince the existing flood waters are being channelized into proposed sedimentation ponds, foreign debris is less likely to be swept downstream because the flow is contained within the channel." *Compare* 2 CR 897 (the Ordinance), *with* 1 CR 268 (Padilla's report).

However, as noted above, Padilla agreed during his trial testimony that his analysis did not consider the effect of back to back storms on the sedimentation ponds' capacity. RR 56. Nor did he consider the fact that Maverick County has actually experienced rainfall amounts far in excess of a "100-year storm." RR 55; RR 66. Furthermore, Padilla conceded at trial that his analysis on factor (c) did not consider the possibility that the sulfur produced by DRCP's mining operations would

become poisonous sulfuric acid when it comes into contact with the water of Elm Creek, its tributaries, and the proposed sedimentation ponds, or that this sulfuric acid might eventually make its way downstream to the Elm Creek subdivision. RR 78-79. Finally, the plain language of Padilla's report demonstrates that he substituted the much narrower phrase "foreign debris" for the Ordinance's arguably broader "materials." *Compare* 2 CR 897 (the Ordinance), *with* 1 CR 268 (Padilla's report). This discrepancy between Padilla's report and the plain language of the Ordinance is not consistent with DRCP's repeated insistence that Padilla's report satisfies the Ordinance as a matter of law. *See, e.g.*, Br. of Appellant at 24-30.

This evidence does not support granting DRCP's requested permit and therefore cannot demonstrate that "[Judge Saucedo] could have reached but one decision, and not the decision [he] made." *Christopher Columbus St. Mkt.*, 302 S.W.3d at 416. For this reason, Judge Saucedo did not abuse his discretion by resolving factor (c) against DRCP's requested permit. *See id.*

4.    Padilla's report did not even consider all of the elements required to satisfy factor (d) of the Ordinance.

Finally, with regard to factor (d)[7] of the Ordinance—"[t]he compatibility of the proposed use with existing and anticipated development"—Padilla's report concluded:

> The proposed, and approved use, for the land is the development of a surface coal mine. However, surface mining is a temporary use for the land. The land will be reclaimed, after mining, to appropriate original contours and to the current use of the land per the requirements of the Railroad Commission of Texas.

*Compare* 2 CR 897 (the Ordinance), *with* 1 CR 268 (Padilla's report). Padilla's report completely ignores, however, that "existing and anticipated development" encompasses more than just the proposed coal mine. 2 CR 897. That phrase also plainly includes the "existing" development near the proposed mine—most obviously, the large residential subdivision just two-and-a-half miles downstream. 2 CR 864.

DRCP ignores that Padilla's report cannot satisfy this factor as a matter of law because it does not even consider the mine's compatibility with any development other than the mine itself—even though, as DRCP itself has conceded numerous times throughout this litigation, the residents of the nearby Elm Creek subdivision **do not**

_____

[7] In its brief, DRCP contends "the trial court did not find that the Permit Application failed to meet" any factors other than factors (a)-(c). Br. of Appellant at 29. This assertion is misleading. While the trial court did specifically find that Padilla's testimony failed to meet factors (a)-(c), it did not issue any express findings, either positive or negative, about DRCP's satisfaction of the remaining factors. 5 CR 3207-11. However, it did find that "DRCP's expert Paul Padilla failed to demonstrate through his testimony that all ten factors contained in Article 4, Section C (2) (a)-(j) of the Ordinance were satisfied, so as to support the granting of the Permit." 5 CR 3209.

**want** DRCP to begin a surface mining operation near their homes. *See, e.g.*, Br. of Appellant at 1 ("It is no secret that a number of Maverick County residents are opposed to DRCP's proposed 2,700-acre coal-mining project near the City of Eagle Pass."). DRCP cannot seriously contend that Judge Saucedo abused his discretion by considering whether the residents' opposition offered valuable insight into "[t]he compatibility of the proposed use with existing and anticipated development," especially when DRCP's own evidence did not even recognize that the "existing development"—*i.e.*, people's homes—was a factor worthy of consideration. 2 CR 897; 1 CR 268.

> 5.    One expert's *ipse dixit*, standing alone, is not enough to prove Judge Saucedo abused his discretion as a matter of law.

Neither Judge Saucedo, the trial court, nor this Court are required to accept Padilla's *ipse dixit* that a particular result is certain. *See, e.g.*, *McMahon v. Zimmerman*, 433 S.W.3d 680, 686-87 (Tex. App.–Houston [1st Dist.] 2014, no pet.) ("Something is not true simply because an expert says it is so."). But that is exactly what DRCP thinks should have happened here. Br. of Appellant at 7 ("In Mr. Padilla's expert opinion, DRCP's Permit Application satisfies each requirement and factor outlined in the Ordinance."). According to DRCP, the fact that Padilla said there is no danger means that there is no danger as a matter of law. *See id.* However, because

Padilla's own testimony demonstrates the limits of the conclusions contained within his report, the evidence supports the trial court's conclusion that Judge Saucedo did not abuse his discretion by rejecting Padilla's conclusions on at least four of the Ordinance's ten factors. *See, e.g.*, *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) ("We have repeatedly held that more than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.") (internal quotation marks omitted). And, as Judge Saucedo's counsel pointed out in the trial court, while the Ordinance required Judge Saucedo to *consider* all ten factors, it did not prohibit him from giving some of the factors more weight than the others. RR 94. For this reason, this Court should hold that the trial court did not err by refusing to grant DRCP's requested mandamus relief. *Cf. Christopher Columbus St. Mkt.*, 302 S.W.3d at 416.

**B.      Judge Saucedo Considered DRCP's Application In Light Of The Entire Ordinance—As The Ordinance Itself Required Him To Do—And Did Not Consider Any Irrelevant Factors.**

1.      Judge Saucedo considered DRCP's application.

Throughout its brief, DRCP emphatically insists that Judge Saucedo never actually considered the contents of its permit application before he denied it. Br. of Appellant at 33, 41-42. It bases this contention on one isolated fragment of Judge Saucedo's deposition testimony—testimony that, in different sections of its brief, it

also insists amounts to "no evidence." *Compare id.*, *with* Br. of Appellant at 63 n.4 (contending that Judge Saucedo's deposition testimony is no evidence of his personal experiences with flooding in Maverick County).

However, the rest of Judge Saucedo's deposition testimony confirms that he actually did review DRCP's application, just as the Ordinance required him to do. 2 CR 896. For example, he testified that "as far as [he] could tell, it was a complete application." Trial Exh. 10 at 15. He was familiar with the application's contents and answered questions about those contents. *Id.* at 16-18. He knew DRCP's plans called for the construction of sedimentation ponds. *Id.* at 23. He identified the factors "that [he] found lacking" in DRCP's application. *Id.* at 28. In short, the record demonstrates that Judge Saucedo properly reviewed DRCP's application, and this Court should reject DRCP's assertions to the contrary. *Compare* Br. of Appellant at 33, 41-42, *with* Trial Exh. 10 at 15, 16-18, 23, 28.

> 2. Judge Saucedo considered all of the relevant factors—*i.e.,* the Ordinance as a whole—before he denied the permit.

The Ordinance specifies that Judge Saucedo had a duty to consider "**all** of the provisions of this ordinance **and** the following [ten] relevant factors." 2 CR 897 (emphasis added). DRCP has emphasized this language over and over again throughout this litigation. Br. of Appellant at 5; 1 CR 7 (DRCP's original petition for

writ of mandamus); 1 CR 44 (DRCP's amended petition for writ of mandamus); 1 CR 92 (DRCP's brief in support of its amended petition).

Despite its near-constant reference to this provision, however, DRCP seems to have not read it very closely. This is because DRCP believes that Judge Saucedo only had power to consider "the following [ten] relevant factors" and not a single word that appeared on any of the other nineteen pages of the ordinance. *Compare* 2 CR 897, *with* Br. of Appellant at 11 (denoting the ten listed factors as "exclusive"), *and* Br. of Appellant at 49 (same), *and* Br. of Appellant at 54 (same), *and* Br. of Appellant at 59 (same), *and* Br. of Appellant at 61 (same), *and* Br. of Appellant at 63 (same). As explained more fully above, the plain terms of the Ordinance demonstrates that DRCP is wrong. 2 CR 897.

Judge Saucedo considered DRCP's application in light of the ten factors DRCP has focused on as well as the rest of the Ordinance. Trial Exh. 10 at 20, 23-24, 33-35. He denied DRCP's permit based on his interpretation and application of those factors. *See id.* This is all the Ordinance required him to do. 2 CR 896-97. Judge Saucedo did not abuse his discretion by doing exactly what the Ordinance required of him. *Cf. Christopher Columbus St. Mkt.*, 302 S.W.3d at 416. As a result, this Court should affirm the trial court's denial of DRCP's requested mandamus relief. *See id.*

3.    All of the factors DRCP describe as "irrelevant" touch on issues the Ordinance required Judge Saucedo to consider.

a.    The quality of floodwater flowing from the proposed mine relates to the dangers the mine could pose to the citizens of Maverick County, and Judge Saucedo's recognition of that risk does not conflict with TCEQ's permitting power.

DRCP contends that "floodwater quality" is not specifically listed in the Ordinance and is therefore not a relevant factor that Judge Saucedo could properly consider. Br. of Appellant at 55-58. It also contends that only the Texas Commission on Environmental Quality ("TCEQ") has the authority to set water quality standards in Texas. Br. of Appellant at 57-58.

But, as noted above *ad nauseaum*, the Ordinance specifically required Judge Saucedo to consider the Ordinance **as a whole**, including its stated purpose "to promote the public health, safety and general welfare and to minimize public and private losses due to flood conditions in specified areas" and its goal of "[r]estrict[ing] or prohibit[ing] uses that are dangerous to health, safety or property in times of flood[.]" 2 CR 886; 1 CR 296; 2 CR 897. Nothing in DRCP's lengthy diatribe about the "irrelevance" of the quality of the floodwater flowing from its mine disputes that contaminants in that floodwater could potentially harm "the public health, safety and general welfare" of the people of Maverick County. Br. of Appellant at 55-58; Trial

-23-

Exh. 10 at 34 (Judge Saucedo's testimony that "I'm just looking at the possibility of any contamination that can fall into that creek and that would go into people's homes."); *see also* RR 67-68 (Padilla's testimony that coal has sulfur in it and that sulfur is "without a doubt" a contaminant). As a result, DRCP's description of floodwater quality as an "irrelevant" factor is wholly inconsistent with the plain language of the Ordinance. *See* 2 CR 886; 1 CR 296; 2 CR 897.

Furthermore, nothing about Judge Saucedo's compliance with his mandatory duties to safeguard the lives and property of Maverick County's residents conflicts with TCEQ's duties to set water quality standards. Both Judge Saucedo's duties and TCEQ's arise from the same place: the Texas Water Code. *See* Tex. Water Code § 16.318 (allowing Maverick County to enact the Ordinance); *see* Tex. Water Code Ann. § 26.011 (Lexis 2015) (establishing TCEQ's duties regarding water quality). This Court must presume that the Legislature was aware of both statutes and intended them to operate in harmony with one another. Tex. Gov't Code Ann. § 311.021 (Lexis 2015). This Court must also presume that the Legislature intended for public interest—*i.e.*, the interests of Maverick County—to prevail over private interests like those DRCP advocates here. Tex. Gov't Code § 311.021(5). Finally, if—as DRCP implies in its brief—TCEQ's permitting process essentially "trumps" the Ordinance's, then the Ordinance is all but meaningless, because under those circumstances a

-24-

landowner with a TCEQ permit would not need to seek a floodplain permit under the Ordinance. *See, e.g.*, *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex. 1981) ("[T]he legislature is never presumed to do a useless act."). For these reasons, this Court should not overturn the trial court's judgment on the basis of an imaginary conflict between Judge Saucedo's order and DRCP's TCEQ permit. *See id.*

    b. Even DRCP's own expert conceded that "public health and safety"—a factor the Ordinance required Judge Saucedo to consider—could broadly be called "the best interest of the county."

DRCP complains that Judge Saucedo abused his discretion by denying its requested permit based on the best interests of Maverick County. *See, e.g.*, Br. of Appellant at 58-60. However, as with DRCP's complaints about Judge Saucedo's consideration of the quality of the floodwater flowing out of the mine, DRCP's insistence that the "best interest of the county" is not relevant is directly contrary to the Ordinance's plain language. 2 CR 897 (requiring Judge Saucedo to consider "**all** the factors and provisions of this ordinance"); 2 CR 886 (providing that the Ordinance is intended to protect human life and health). As DRCP's own expert conceded in the trial court, issues of public health and safety—which are among the reasons Judge Saucedo mentioned for denying the permit—are included under the umbrella of "best interest of the county." RR 72-73; Trial Exh. 10 at 33.

Furthermore, several of the ten factors that DRCP insists are the "exclusive" valid considerations also implicate what could broadly be termed the "best interest of the county." *See* 2 CR 897 (commanding Judge Saucedo to consider, *inter alia*, "danger to life and property," "danger that materials may be swept onto other lands to the injury of others," and "[t]he compatibility of the proposed use with existing and anticipated development"). Additionally, DRCP's insistence that these factors cannot possibly implicate a "best interest of the county" standard is directly contrary to the unambiguous rules of interpretation set out within the four corners of the Ordinance itself:

SECTION F.   INTERPRETATION

In the interpretation and application of this ordinance, all provisions shall be; (1) considered as minimum requirements; (2) liberally construed in favor of the governing body; and (3) deemed neither to limit nor repeal any other powers granted under State statutes.

2 CR 894. If the trial court had accepted DRCP's interpretation of the Ordinance—that the best interest of the county is irrelevant—it would have strictly construed the Ordinance *against* Judge Saucedo. Trial Exh. 10 at 33 (Judge Saucedo's testimony that he was concerned about the mine's effect on "the health and welfare . . . of the residents who live in that area"). Under the Ordinance's plain terms, however, the trial court must do the exact opposite and construe the application and interpretation of this

ordinance *liberally in favor of* Judge Saucedo. *See* 2 CR 894. As a result, there is some evidence to support the trial court's conclusion that Judge Saucedo's reliance on "the best interest of the county" was not an abuse of discretion. 2 CR 894; 2 CR 897; Trial Exh. 10 at 33; *Christopher Columbus St. Mkt.*, 302 S.W.3d at 416.

> c. Judge Saucedo did not consider any surface coal mining regulations except to the extent that he concluded DRCP's proposed sedimentation ponds were not sufficient to adequately protect the citizens and property of Maverick County.

DRCP appears to believe that Judge Saucedo usurped the authority of the Texas Railroad Commission by considering his own prior experience with sedimentation ponds like the ones DRCP plans to construct. *See* Br. of Appellant at 61 (citing Judge Saucedo's testimony that he "ha[s] problems with sedimentation ponds"). This belief appears to arise out of DRCP's assumption that Judge Saucedo's refusal to rubber-stamp the county flood permit required by the Ordinance, standing alone, amounts to a usurpation of the Railroad Commission's statewide authority. *See* Br. of Appellant at xv ("Notwithstanding that DRCP has obtained the requisite mining and wastewater discharge permits from the Railroad Commission of Texas . . . and the Texas Commission on Environmental Quality . . . the Floodplain Administrator defied the state permitting regime[.]"). As noted above, however, if successfully obtaining a state-required permit turns the county's own permitting process into a foregone

conclusion, then the Ordinance will cease to have any meaning at all. *See, e.g.*, *Hunter*, 620 S.W.2d at 551.

Furthermore, Judge Saucedo testified that his concerns about the sedimentation ponds arise out of his personal experience with similar ponds that have overflowed and adversely affected people who live in the area. Trial Exh. 10 at 23-24. This concern is not, as DRCP implies, a usurpation of the Railroad Commission's own permitting process, but is instead consistent with Judge Saucedo's duties to consider, *inter alia*, "danger to life and property," "danger that materials may be swept onto other lands to the injury of others," and "[t]he compatibility of the proposed use with existing and anticipated development." 2 CR 897. Because this allegedly "irrelevant" factor is consistent with Judge Saucedo's duties under the Ordinance, there is some evidence to support the trial court's conclusion that Judge Saucedo did not abuse his discretion by considering it. *See id.* As a result, this Court should affirm the trial court's judgment. *Christopher Columbus St. Mkt.*, 302 S.W.3d at 416.

d. Judge Saucedo's personal experiences with flooding in Maverick County are relevant to the question of whether DRCP's proposed mine satisfies the requirements of the Ordinance.

DRCP complains that Judge Saucedo's reference to his own personal experience is an "irrelevant factor" in the permitting process. Br. of Appellant at 63-64. But Judge Saucedo did not rely on his personal experience as a "factor" to support granting or denying the permit. Instead, he relied on his personal experiences with flooding in Maverick County *as evidence* to support his conclusion that the proposed mine project could potentially endanger the lives and property of the residents of Maverick County. Furthermore, while DRCP insists that Judge Saucedo "failed to even introduce any evidence supporting these alleged personal experiences," it wholly ignores that Judge Saucedo's deposition testimony—*which DRCP itself introduced into evidence at trial*—is, in fact, evidence. *See Westergren*, 441 S.W.3d at 682; RR 21 ("MR. COBB: And, Your Honor, I'd also at this time like to admit Exhibit Number 9, Judge Saucedo's deposition transcript."). Judge Saucedo's deposition testimony is some evidence to support the trial court's conclusion. *See Christopher Columbus St. Mkt.*, 302 S.W.3d at 416.

4. The fact that the previous floodplain administrator awarded DRRC a permit in 1998 has no relevance to DRCP's 2011 and 2013 applications because the evidence showed a change in relevant circumstances between 1998 and 2013.

Finally, DRCP insists that Judge Saucedo should have approved its 2011 permit application and its 2013 supplemental application because—according to DRCP—those applications are virtually identical to DRRC's 1998 permit application, which the then-floodplain administrator approved. Br. of Appellant at 5; Br. of Appellant at 48. Judge Saucedo testified, however, that "there are factors . . . that I've seen that I don't believe apply now that were there in 1998" such as "[f]looding issues that we seen since—since then." Trial Exh. 10 at 32; *see also* John Schwartz, *Scientists Warn to Expect More Weather Extremes*, N.Y. Times, May 27, 2015, at A18 (noting "the enormous building boom that Texas has enjoyed in recent decades has led to greater problems with water runoff and higher costs of storm damage"). In other words, Judge Saucedo specifically testified that the changed conditions in the area since 1998 contributed to his decision to deny the new permit. *See* Trial Exh. at 32.

Judge Saucedo's conclusions were bolstered by DRCP's own expert, who also testified to a significant change since 1998: FEMA's changes to the applicable floodplain maps. RR 35. Because both Judge Saucedo and DRCP's own expert identified relevant changes that have taken place since 1998 that change the analysis

of this situation, DRCP's contention that the 1998 permit is at all relevant in this dispute is without merit. Trial Exh. 10 at 31-32; RR 35.

**C.     Judge Saucedo Did Not Abuse His Discretion By Denying DRCP's Permit Without A Written Explanation—But Even If He Had Abused His Discretion, DRCP's Only Remedy Is A Remand To Judge Saucedo To Obtain That Explanation.**

DRCP contends that Judge Saucedo "was required to provide an explanatory order with reasons for his denial" and that his failure to do so demonstrates that his denial was arbitrary and capricious. Br. of Appellant at 42, 46. To support this proposition, it has cited a number of cases involving judicial review of administrative decisions. *See generally* Br. of Appellant at 42-49. But Judge Saucedo's permit denial is not, strictly speaking, an "administrative decision" because Judge Saucedo is not a state agency subject to the provisions of the Texas Administrative Procedure Act. *See* Tex. Gov't Code Ann. § 2001.003(7) (Lexis 2015) (defining "state agency"). None of the cases DRCP has cited hold that permitting decisions made by a county judge like Judge Saucedo are subject to the same rules as a statewide administrative agency's rulemaking or adjudicatory processes. *See id.*

Even if Judge Saucedo were a "state agency," however, the Texas Supreme Court has held that the scope of judicial review of administrative decisions "is governed by the enabling statute in the area under adjudication." *Tex. Health*

-31-

*Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 449 (Tex. 1984). Here, the "enabling statute in the area under adjudication" is section 16.318 of the Texas Water Code, which allowed Maverick County to promulgate the Ordinance. *See* Tex. Water Code § 16.318. However, neither section 16.318 nor the Ordinance itself specify that judicial review of a floodplain administrator's permit denial is limited to the reasons, if any, expressed in the denial order. *See* Tex. Water Code § 16.318; 2 CR 886-905.

Furthermore, DRCP has repeatedly cited the Austin Court of Appeals's decision in *Amtel Communications, Inc. v. Public Utility Commission* to support its contention that a reviewing court may only judge a challenged agency action based on "the ***grounds invoked by the agency***." Br. of Appellant at 43, 44 (citing *Amtel Commc'ns, Inc. v. Public Utility Comm'n*, 687 S.W.2d 95, 106 (Tex. App.–Austin 1985, no writ)) (emphasis in original). What DRCP has failed to tell this Court, however, is that the *Amtel Communications* Court **wanted** to remand an agency order it considered insufficient **but concluded it could not do so** because it was bound by the Texas Supreme Court's contrary decision in *Texas Health Facilities*. *See Amtel Commc'ns*, 687 S.W.2d at 106 (citing *Tex. Health Facilities*, 665 S.W.2d at 453). In *Texas Health Facilities*, the Texas Supreme Court recognized that the applicable statutes required the agency to include written findings of fact in its order. *Tex. Health Facilities*, 665

S.W.2d at 450. Nevertheless, the Supreme Court "chose [notwithstanding an insufficient agency order] not to remand the case but to affirm the agency order on a basis that the Court itself could construct a saving rationale from the seven valid findings of basic fact alone." *Amtel Commc'ns*, 687 S.W.2d at 106 (citing *Tex. Health Facilities*, 665 S.W.2d at 453).

Although the *Amtel Communications* Court went on to cite several "generally accepted rules that apply to the judicial review of an administrative order," it did so to explain why it disagreed with the Texas Supreme Court's decision in *Texas Health Facilities*, **not**—as DRCP has implied here—because those "generally accepted rules" formed the basis of its opinion. *Compare Amtel Commc'ns*, 687 S.W.2d at 110 (affirming the district court's approval of the Commission's final order despite the Austin Court's reluctance to do so), *with* Br. of Appellant at 43, 44. Because **all** of the quotations DRCP's brief pulls from *Amtel Communications* come from the portion of the opinion that explains why that Court disagreed with the Supreme Court, those quotations are dicta and do not mandate overturning the trial court's judgment. *Compare* Br. of Appellant at 43-44, *with Amtel Commc'ns*, 687 S.W.2d at 106.

Finally, even if Judge Saucedo had been required to provide a list of reasons for his denial, DRCP ignores that the sole remedy for this error, if any, is a remand to Judge Saucedo to allow him to supply an explanation—as even DRCP's own cited

authority recognizes.[8] *See, e.g.*, *City of El Paso v. El Paso Elec. Co.*, 851 S.W.2d 896, 899-900 (Tex. App.–Austin 1993, writ denied) (affirming the district court's judgment "remand[ing] the case to the Commission to supply an explanation" for its action); *Madden v. Tex. Bd. of Chiropractic Exam'rs*, 663 S.W.2d 622, 623 (Tex. App.–Austin 1983, writ ref'd n.r.e.) ("We will reverse the judgment below and order that the proceedings be remanded to the Board."). However, because DRCP has not presented this Court with any evidence to support a conclusion that Judge Saucedo would reach a different decision on remand, a remand for a "more complete" order that nevertheless reaches the exact same result would be a waste of judicial resources, and this Court should refuse to order it. *Cf. Amtel Commc'ns., Inc.*, 687 S.W.2d at 105 (noting the Austin Court of Appeals's desire to remand a case to the Public Utility Commission after finding "apparent defects" in the Commission's findings of fact because "[w]e are not reasonably satisfied that the Commission would have made the same decision based upon its remaining [unchallenged] findings of ultimate fact.").

---

[8]It is true that DRCP cited one case where the Texas Supreme Court rendered judgment vacating a Railroad Commission order because it lacked sufficient explanation for the Commission's decision. *Morgan Drive Away, Inc. v. R.R. Comm'n of Tex.*, 498 S.W.2d 147, 152 (Tex. 1973). In that case, however, the statute that imposed the requirement of written fact-finding—a fact which, as noted above, does not exist in this case—also provided that an order entered without the required fact-finding "shall be void." *Id.* at 150 (internal quotation marks omitted).

**IV. DRCP RECEIVED THE PROCESS IT WAS DUE FROM JUDGE SAUCEDO AND IN THE TRIAL COURT.**

DRCP contends that it was denied due process of law because—at least according to DRCP—"[p]rior to depriving DRCP of its property interests, [Judge Saucedo] provided DRCP with no hearing or opportunity to be heard." Br. of Appellant at 65. As a threshold matter, it is essential to note that this argument assumes DRCP has a property interest in a permit it has requested but not yet been granted. *See, e.g.*, *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit [that stems from state law], a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). DRCP has not cited any authority to support this proposition. *Compare generally* Br. of Appellants, *with Roth*, 408 U.S. at 577. Nor has DRCP contended that Judge Saucedo's actions stripped it of its ability to use its land in accordance with its existing permits. *See generally id.*

In any event, DRCP has not pointed toward any provisions in the Ordinance that require a floodplain administrator to hold a hearing before granting or denying a floodplain development permit, nor does it contend that it ever requested a hearing during the two years that Judge Saucedo was considering its permit application. *See*

*generally* Br. of Appellant at 64-65. In fact, even DRCP's own cited authority points out that all procedural due process requires is "an opportunity for a hearing appropriate to the nature of the case." *City of Dallas v. Saucedo-Falls*, 268 S.W.3d 653, 660 (Tex. App.–Dallas 2008, pet. denied). Here, the "hearing appropriate to the nature of the case" is set out in the Ordinance itself, and it matches the process DRCP received from Judge Saucedo. 2 CR 897-98 (promulgating the applicable "permit procedures"); 2 CR 896-97 (setting out the "duties & responsibilities of the floodplain administrator," none of which involve holding full hearings on permit applications).

Finally, DRCP has not contended that the **<u>trial court</u>** denied it the process it was due. *See* Br. of Appellant at 64-65. Instead, it complains simply—and with no citation to any authority—that "the trial court erred when it determined that due process was not at issue in this matter." Br. of Appellant at 65. But even if DRCP's due process rights had been violated in the initial permitting process—which they were not—that violation was remedied when DRCP received what even it calls "a full trial on the merits." Br. of Appellant at 10. DRCP has not presented this Court with any argument or authority to support a conclusion that it was entitled to process more extensive than the full trial on the merits it actually received. *See generally* Br. of Appellant at 64-65. The fact that the trial ended in a result that DRCP is unhappy with does not amount to a violation of its due process rights.

## CONCLUSION AND PRAYER

Judge Saucedo denied DRCP's requested permit because he believed DRCP had not satisfied its burden under all of the provisions of the Ordinance. Because this is all that is required under the Ordinance or any other Texas law, Judge Saucedo did not have a ministerial duty to grant DRCP's permit, and he did not abuse his discretion by refusing to do so. Furthermore, because there is some evidence to support Judge Saucedo's refusal to grant the permit, the trial court did not err by refusing to compel Judge Saucedo to issue the permit in spite of his own misgivings about its impact on the citizens of Maverick County. *See* 2 CR 897 (commanding Judge Saucedo to consider, *inter alia*, "danger to life and property," "danger that materials may be swept onto other lands to the injury of others," and "[t]he compatibility of the proposed use with existing and anticipated development"). Finally, DRCP has already received all of the process it was due in this dispute.

For these reasons, Appellees David Saucedo as Floodplain Administrator and County Judge of the Maverick County Commissioners Court and the Maverick County Commissioners Court pray that this Court will affirm the trial court's judgment in its entirety. Appellees further pray for any additional relief to which they may be entitled in law or equity.

Respectfully submitted,

  /s/ *Shannon K. Dunn*
Beth Watkins
Texas Bar No. 24037675
Shannon K. Dunn
Texas Bar No. 24074162
LAW OFFICE OF BETH WATKINS
926 Chulie Drive
San Antonio, Texas 78216
(210) 225-6666– phone
(210) 225-2300– fax

ATTORNEYS FOR APPELLEES
DAVID SAUCEDO AS FLOODPLAIN
ADMINISTRATOR AND COUNTY JUDGE
OF THE MAVERICK COUNTY
COMMISSIONERS COURT AND THE
MAVERICK COUNTY COMMISSIONERS
COURT

## CERTIFICATE OF SERVICE

I hereby certify that on [date] a true and correct copy of this brief was forwarded in accordance with rule 9.5 of the Texas Rules of Appellate Procedure to the following counsel of record:

Leonard Dougal
Mallory Beck
JACKSON WALKER LLP
100 Congress Avenue, Suite 1100
Austin, Texas 78701
ldougal@jw.com

Bill Cobb
Matthew Ploeger
Jenny Lee Smith
COBB & COUNSEL
401 Congress Avenue, Suite 1540
Austin, Texas 78701
bill@cobbxcounsel.com

        /s/ *Shannon K. Dunn*
        Shannon K. Dunn
        ATTORNEY FOR APPELLEES
        DAVID SAUCEDO AS FLOODPLAIN
        ADMINISTRATOR AND COUNTY JUDGE OF
        THE MAVERICK COUNTY
        COMMISSIONERS COURT AND THE
        MAVERICK COUNTY COMMISSIONERS
        COURT

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2).

1. Exclusive of the portions exempted by Tex. R. App. P. 9.4(i)(1), this brief contains 8,985 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Corel WordPerfect X6 software and converted to PDF format by Acrobat Distiller 10.1.3.

/s/ *Shannon K. Dunn*
Shannon K. Dunn

ATTORNEY FOR APPELLEES