Affirmed and Opinion filed November 13, 2009.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-07-00980-CV



 

Christopher Columbus Street
Market LLC, Alfio Fischera, and Ed Eubanks, Appellants

V.

The Zoning Board of
AdjustmentS of The City of Galveston, Texas, Appellee

 



On Appeal from the 56th District
Court

Galveston County, Texas

Trial Court Cause No. 07CV0078-A



 

OPINION








Property owners appeal the district
court’s order affirming the decision of a municipal zoning board to uphold a
decision by a city administrative agency to deny the property owners’ application
for a city permit to demolish property in a historical area of the city.  The
property owners also challenge the district court’s severance of their constitutional
claims against the city and zoning board from the appeal of the zoning board’s
decision.  We affirm.

 

I.  Factual and Procedural Background

Appellants Christopher Columbus Street Market LLC,
Alfio Fischera, and Ed Eubanks (collectively referred to hereinafter as
“Property Owners”) own property located in the East End Historical District of
Galveston, Texas.  The property at issue is comprised of a two-story home (“Main
Structure”) built around 1880 and two additions, a single-story addition and a
two-story addition (collectively, “Additions”), both of which were built around
1920.  The Main Structure and the Additions share a common wall.

The City of Galveston approved the Property Owners’
request for a demolition permit of the single-story addition in March 2006,
shortly after the Property Owners acquired the property.  At some point prior
to November 1, 2006, the Property Owners requested a city inspection of the
property, citing stability and structural concerns.  By letter dated November
2, 2006, the City notified the Property Owners that a city building inspector had
visited the property on November 1 and 2, and deemed the Additions to have
unsafe structural issues.  In this letter (hereinafter the “City Letter”), the
City requested that the Property Owners secure the property’s entrances and outer
perimeter to prevent entry.  The City asked the Property Owners to correct the safety
concerns and then submit a letter from a structural engineer addressing the
structural integrity of the building.  The City advised the Property Owners
that any work on the building required a Certificate of Appropriateness and
advanced approval from the Galveston Landmark Commission (“Landmark Commission”),
an agency created under section 211.003 of the Texas Local Government Code.[1] 


On November 2, 2006, the Property Owners filed an
application with the City for a demolition permit of the Additions, alleging
unsafe condition of the Additions.  One week later, the City granted a permit
for demolition of the Additions, noting that the Main Structure should be
stabilized before demolition and that the demolition work should be executed
with care to avoid damage to the Main Structure.

On November 6, 2006, prior to receiving the City’s
approval for the demolition of the Additions, the Property Owners filed a
request for a Certificate of Appropriateness with the Landmark Commission to
demolish the “current structure,” indicating that it was unsafe and “pose[d] an
imminent threat to public health or safety.”  By letter, the City informed the
Property Owners that the Landmark Commission had held a special meeting and had
voted to deny the owners’ request for a permit to demolish the Main Structure.

Proceedings
Before the Landmark Commission

The record contains a transcript of the Landmark
Commission’s meeting at which a staff member gave a report and a recommendation
to deny the Property Owners’ request.  The Landmark Commission then opened the
meeting for a public hearing in which adjacent property owners and other
citizens spoke in opposition to demolition of the Main Structure.  The Property
Owners also addressed the Landmark Commission.  A City building official, David
Ewald, confirmed that the property had neither been referred to the City for
condemnation nor been considered by the City’s Building Standards Commission.

Attached to the staff report were two expert reports
from structural engineers.  Both reports were submitted to the Landmark
Commission.  A structural engineer hired by the Property Owners, Raymond
Reesby, opined in his report (“Reesby Report”) that the “structure” on the
property was structurally unsafe and economically unrepairable.  Reesby
recommended that the structure be demolished to prevent injury, death, or
damage to adjacent property.  Reesby also addressed the Landmark Commission and
predicted that demolition of the Additions would create a counter reaction,
causing the “front end”—presumably, the Main Structure—to “go into the air.”  

The City submitted the report of structural engineer
Suhail Idriss (“Idriss Report”).  In his report, Idriss indicated that he
inspected the entire structure on the property, comprised of the Main Structure
and the Additions, and found the Additions to be deteriorated.  Idriss advised in
his report that demolition of the Additions was feasible and cautioned that
such demolition should be undertaken so as to avoid damage to the Main
Structure.  

In response to the Landmark Commission’s questions, a
staff member confirmed Idriss’s recommendation that the Main Structure could be
stabilized while the Additions were demolished.  The Landmark Commission unanimously
voted to deny the Property Owners’ request for a Certificate of Appropriateness
for demolition of the Main Structure.

Proceedings
Before the Zoning Board

The Property Owners appealed the Landmark Commission’s
decision to appellee the Zoning Board of Adjustments of the City (“Zoning
Board”), an agency created under section 211.008 of the Texas Local Government
Code.[2] 
The record contains a transcript of the Zoning Board’s meeting in which a staff
report containing the procedural history of the appeal was presented and made
part of the public record.  The staff report contained attachments including
all documents and materials considered by the Landmark Commission and a
transcript from the Landmark Commission’s meeting.  The Zoning Board opened the
meeting for a public hearing in which an attorney for the Property Owners and
one of the Property Owners spoke.  Residents and citizens spoke in opposition
to reversing the Landmark Commission’s decision.  

In response to questions from the Zoning Board, Idriss
reiterated the findings in his report that after he inspected the property, he
found that only the Additions were unsafe.  Idriss confirmed his opinion that
the Main Structure was salvageable, not unsafe, and would not collapse. 
According to Idriss, demolition of the Additions would not damage the Main
Structure as long as a shared common wall was repaired.  A City attorney spoke
about the City’s inspection process and explained how Idriss became involved.  

After a series of failed motions, the Zoning Board,
in a four-to-one vote, approved a motion to deny the Property Owners’ appeal
and to uphold the Landmark Commission’s decision.

Proceedings
in the District Court

The Property Owners filed a petition for writ of
certiorari in the district court seeking review of the Zoning Board’s
decision.  In their live petition to the district court, the Property Owners
also asserted several constitutional claims against the City and Zoning Board.  The
district court granted certiorari to hear the appeal.  After a hearing on the appeal
and consideration of the parties’ pleadings, evidence submitted pursuant to the
writ, and the evidence available to the Zoning Board, the district court found
that the Zoning Board did not abuse its discretion in upholding the Landmark
Commission’s decision.  

Following the district court’s ruling, the Zoning
Board moved to formally sever the district court’s order affirming the Zoning
Board’s decision from the causes of action asserted in the Property Owners’
pleadings.  After conducting a hearing on the motion, the district court
granted the Zoning Board’s motion to sever.

II.  Issues and Analysis

Severance

            In their first
issue, the Property Owners assert that the district court erred in severing the
Property Owners’ constitutional claims against the City and Zoning Board.

            In their live
petition, the Property Owners brought a number of claims against the City and
Zoning Board, including:  (1) a petition for writ of mandamus directing the
City to issue an unrestricted demolition permit for the property, (2) a
petition for writ of certiorari appealing the decision of the Zoning Board, (3)
a claim for denial of due process at the Zoning Board hearing, (4) a claim for
unconstitutional “taking” of the property without compensation, and (5) a claim
that the ordinances and provisions governing the denial of a demolition permit
are unconstitutionally vague.  After the district court granted certiorari to
hear the appeal, the following exchange occurred at a hearing on April 2, 2007:

[DISTRICT JUDGE]:           We’re here on
07CV0078, Christopher Columbus Street Market, LLC, et al. versus The City of
Galveston, Texas, et al.  We’re here on — at the request of the Plaintiff
[Property Owners]; is that correct?

[PROPERTY OWNERS]:    Correct, your
Honor.  Couple of brief housekeeping matters, your Honor.  In the first place,
there are several items in the pleadings, other items than the one we’re here
on today.  They involve such things as Constitutional questions and so forth. 
I think counsel is correct.  They’re all premature.  I’m not going to address
them directly today because they’ll be moot if we get the relief we want today.

What we’re here for — I represent the
Plaintiffs [Property Owners] — is on a writ of certiorari appealing the decision
of the Galveston Zoning Board of Adjustments of its — taken at its January 10th,
2007 meeting. …

            It is clear that
the parties and the district court agreed to proceed with the Property Owners’
claims under a bifurcated structure with separate proceedings, dealing first
with the writ granted on the appeal, in which the district court sat as an
appellate court of review of the Zoning Board’s decision.  The Property Owners
invited the district court to proceed in this fashion.  No party objected.  After
the hearing, the district court issued an order on April 11, 2007, affirming
the Zoning Board’s decision.  The record reflects that, as early as May 2007,
the Property Owners had obtained a bench trial setting for September 2007, to
try the Property Owners’ remaining constitutional claims.  Texas Rule of Civil
Procedure 174(b), entitled “Consolidation; Separate Trials,” allows a trial
court to order a separate trial on any issue in the interest of convenience or
to avoid prejudice.  Tex. R. Civ.
P. 174(b); see Tarrant Reg’l Water Dist. v. Gragg, 151 S.W.3d 546, 556,
557 (Tex. 2004).  Neither party contends that the bifurcated approach utilized
in this case was improper.  Moreover, by failing to voice any objection in the
district court, the Property Owners waived the complaint.  See Tex. R. App. P.
33.1(a) (providing that to preserve a complaint for appellate review, a party
must make a timely request, objection, or motion with sufficient specificity to
apprise the trial court of the complaint).  

The order entered at the conclusion of a separate
trial is often interlocutory.  Hall v. City of Austin, 450 S.W.2d 836,
838 (Tex. 1970).  No final and appealable judgment can be rendered until every
controlling issue has been heard and decided or until the untried issues have
been severed into one or more separate and independent causes.  See id.  After
the district court affirmed the Zoning Board’s decision, the Zoning Board formally
moved the district court to sever the constitutional claims.  The district
court granted the motion for severance, stating the following in its order:

It is therefore, ORDERED that this Court’s Order of
April 11, 2007, affirming the decision of the Zoning Board of Adjustments of
the City of Galveston, Texas, is hereby severed from this action and made the
subject of the separate action styled Christopher Columbus Street Market
LLC, Al Fischera and Ed Eubanks v. The Zoning Board of Adjustment of the City
of Galveston, Texas, having Cause No. 07CV0078-A.

A severance is possible only when a lawsuit involves
two or more separate and independent causes of action that are final,
enforceable, and appealable.  See id.; see also Garrison v. Tex.
Commerce Bank, 560 S.W.2d 451, 453 (Tex. App.—Houston [1st Dist.] 1977,
writ ref’d n.r.e.).  A severable cause of action may be tried separately
under the provisions of Rule 174, but an issue that might properly be the
subject of a separate trial is not necessarily severable.  See Kansas Univ.
Endowment Ass’n v. King, 162 Tex 599, 350 S.W.2d 11, 19 (Tex. 1961).  Texas
Rule of Civil Procedure 41, entitled “Misjoinder and Non-Joinder of Parties,” vests
the trial court with broad discretion in severing cases.  See Tex. R. Civ. P. 41; Guar. Fed. Sav.
Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 658 (Tex. 1990).  A claim
is properly severable if (1) the controversy involves more than one cause of
action, (2) the severed claim is one that would be the proper subject of a
lawsuit if independently asserted, and (3) the severed claim is not so
interwoven with the remaining action that it involves identical facts and
issues.  Horseshoe Operating Co., 793 S.W.2d at 658.  The controlling
reasons for granting a severance are to do justice, avoid prejudice, and
further convenience.  Id.  However, once a case has been submitted to a
trier of fact, a case is no longer severable.  See State Dep’t of Highways
& Pub. Trans. v. Cotner, 845 S.W.2d 818, 819 (Tex. 1993).  A trial
court’s order severing a cause of action is reviewed by appeal and is not to be
disturbed absent an abuse of discretion.  Id. 

According to the Property Owners, the district court
committed error in ordering the severance.  Relying on the case of State
Department of Highways & Public Transportation v. Cotner, 845 S.W.2d
818, 819 (Tex. 1993), the Property Owners argue that severance of claims is
prohibited once claims have been submitted to a trier of fact.  In the case
under review, the district court granted a writ of certiorari for the Property
Owners’ appeal of the decision of the Zoning Board, which, if independently
asserted, would be the proper subject of a lawsuit.  See Tex. Loc. Gov’t Code Ann. § 211.011(a),
(c) (Vernon 2008) (allowing a party to appeal a decision made by a
quasi-judicial body such as a municipal zoning board by filing a writ of
certiorari with the district court).  As reflected in the record, the parties
and district court tried the appeal matter separate from the constitutional
claims asserted in the Property Owners’ pleadings against the City and Zoning
Board.  See Tex. R. Civ.
P. 174(b) (allowing separate trials); Kansas Univ. Endowment Ass’n, 162
Tex. at 612, 350 S.W.2d at 19 (providing that a severable cause of action may
be tried separately under the provisions of Rule 174).  Therefore, the
constitutional claims were not submitted to a trier of fact; rather, those
claims were severable causes of action that could be tried separately under the
provisions of Rule 174.  See Kansas Univ. Endowment Ass’n, 162 Tex. at
612, 350 S.W.2d at 19; see also Aeternia Enters. U.S.A., Ltd. v.
Magnitogorsk Steel & Wire Works, No. 01-05-00964-CV, 2009 WL 1689102 at
*3 (Tex. App.—Houston [1st Dist.] June 18, 2009, no pet.) (holding that trial
court judgment to enforce arbitration clause was not final as to arbitration
award so that subsequent severance of claims did not transform an interlocutory
judgment into a final judgment).  In this context, the district court did not
err in severing the claims because the Property Owners’ claims had not been
submitted to a trier of fact.

The Property Owners also assert that the severance
order improperly divided a cause of action because the actions of the Zoning
Board and the City were closely intertwined.  We disagree.  The Property
Owners’ appeal of the decision of the Zoning Board, if independently asserted,
is a separate and independent cause of action.  See Tex. Loc. Gov’t Code Ann. § 211.011(a),
(c) (providing that party may appeal a municipal board’s decision by filing
writ of certiorari in the district court).  The district court’s determination
as to whether the Zoning Board abused its discretion in determining whether the
Main Structure posed an imminent threat is not interwoven with the Property
Owners’ constitutional claims against the City and Zoning Board.  See
Horseshoe Operating Co., 793 S.W.2d at 658 (identifying claims as being
interwoven because the causes of action share the same facts and issues); see
also Petrovich v. Vautrain, 730 S.W.2d 857, 861 (Tex. App.—Fort Worth 1987,
writ ref’d n.r.e.) (providing that severance was proper because recovery in one
cause of action did not bar recovery in other cause of action).  The district
court therefore did not abuse its discretion in severing the claims.  

Having found no merit in the Property Owners’
severance arguments, we overrule the Property Owners’ first issue.[3]

Upholding the Landmark
Commission’s Decision

            In two issues,
the Property Owners challenge the district court’s affirmance of the Zoning
Board’s decision to deny the Property Owners’ request for a demolition permit
for the Main Structure.  According to the Property Owners, the record contains
no evidence to support the Zoning Board’s ruling to affirm the Landmark
Commission’s decision.  The Property Owners argue that the only evidence for
the Zoning Board’s consideration was from the Reesby Report, in which Reesby
opined that the property could not be salvaged, because, according to the
Property Owners, the Idriss Report constitutes no evidence.  

Standard of Review

The Zoning Board acted as a quasi-judicial body in
reviewing the decision by the Landmark Commission.  See Dengler v. City of
Groves, 997 S.W.2d 418, 420 (Tex. App.—Beaumont 1999, pet. denied)
(reviewing an order from a board of adjustments affirming a city build inspector’s
determination that business did not violate city ordinances).  A party may seek
judicial review of a decision made by a quasi-judicial body by filing a writ of
certiorari with the district court.  See Tex. Loc. Gov’t Code Ann. § 211.011(a), (c) (Vernon 2008); City
of Dallas v. Vanesko, 189 S.W.3d 769, 771 (Tex. 2006).  The district court
sits only as a court of review of the Zoning Board’s decision.  See Vanesko,
189 S.W.3d at 771.  Once the district court issues a writ of certiorari,
the only issue for the district court’s determination is the legality of a
Zoning Board’s order.  See id.  The Zoning Board’s order is presumed to
be legal, and the Property Owners have the burden of establishing illegality by
a “very clear showing” that the Zoning Board abused its discretion.  See id.;
Pick-N-Pull Auto Dismantlers v. Zoning Bd. of Adjustment of the City of Fort
Worth, 45 S.W.3d 337, 340 (Tex. App.—Fort Worth 2001, pet. denied).  The Zoning
Board abuses its discretion if it acts arbitrarily, unreasonably, or without
reference to any guiding rules and principles.  Vanesko, 189 S.W.3d at
771.  

A reviewing court may not put itself in the position
of the Zoning Board and substitute its findings for those of the Zoning Board
even if the overwhelming preponderance of the evidence is against the Zoning
Board’s decision.  Id.; see Sw. Paper Stock, Inc. v. Zoning Bd. of
Adjustments of the City of Fort Worth, 980 S.W.2d 802, 805 (Tex. App.—Fort
Worth 1998, no pet.).  A party attacking the legality of the Zoning
Board’s order must establish that the Zoning Board could have reached but one
decision, and not the decision it made.  Id.  In determining whether the
Zoning Board’s decision was legal, the district court may consider the Zoning
Board’s verified return[4]
along with additional evidence introduced in the district court.  Tex. Loc. Gov’t Code Ann. § 211.011(a),
(e), (f); see San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67,
70 (1945); Sw. Paper Stock, Inc., 980 S.W.2d at 805.  The Zoning Board
does not abuse its discretion by basing its decision on conflicting evidence.  See
Sw. Paper Stock, Inc., 980 S.W.2d at 805.  As long as the record contains some
evidence of substantive and probative character to justify the Zoning Board’s
decision, the Zoning Board has not abused its discretion.  Id. at
805–06.

We consider whether the Zoning Board abused its
discretion in affirming the decision of the Landmark Commission.  See Boehme
Bakery, 190 S.W.2d at 70; Dengler, 997 S.W.2d at 420.  Our
abuse-of-discretion review is necessarily less deferential when considering any
legal conclusions made by the Zoning Board and is similar in nature to a de
novo review.  Vanesko, 189 S.W.3d at 771.

The Decisions Made by the Landmark Commission and the Zoning Board


            Under the
authority of section 211.003(b) of the Texas Local Government Code, the City has
adopted Section 29–80 of the “Zoning Regulations 1991,” entitled “Special
Historical District Regulations,” (hereinafter referred to as “Zoning
Standards”) and established the Landmark Commission to regulate construction,
reconstruction, alteration, or razing of buildings and structures in designated
areas of historical, cultural, or architectural significance.  See Tex. Loc. Gov’t Code Ann. § 211.003(b)
(Vernon 2008) (authorizing a governing body of a municipality to regulate zoning
standards for areas designated as having historical significance).  Under the
Zoning Standards, the Landmark Commission has original jurisdiction over the
request for a Certificate of Appropriateness.  

In their request for a Certificate of Appropriateness,
the Property Owners applied for a demolition permit for the Main Structure on
the property, asserting that it posed an imminent threat to public health or
safety.  Under the Zoning Standards, an applicant for a Certificate of
Appropriateness has the burden of proof in presenting all necessary facts and
documentation to warrant the Landmark Commission’s recommendation of approval of
the application.  When, as in this case, a party applies for a demolition
permit on the basis of imminent threat to public health or safety, the Zoning
Standards provide that the Landmark Commission must recommend denial of the
application unless the Landmark Commission finds the following:

(i)        The
structure to be demolished currently constitutes an imminent threat to public
health or safety; and

(ii)       There is
no reasonable way, other than demolition, to eliminate the threat in a timely
manner.

Galveston Zoning Standards §
29–80(i)(7)(c).  

The Landmark Commission, as the fact finder, was
entitled to weigh the evidence, both favorable and unfavorable, in order to
resolve any conflicts in the evidence.  See Pick-N-Pull Auto Dismantlers,
45 S.W.3d at 341 (providing that the agency with original jurisdiction is the
fact finder).  Following the hearing, the Landmark Commission voted unanimously
to deny the Property Owners’ request for demolition of the Main Structure.[5]
 The Landmark Commission made no additional findings.

The Property Owners appealed the Landmark Commission’s
decision to the Zoning Board, as permitted by the Zoning Standards.  The appeal
turned on whether the Landmark Commission acted arbitrarily or capriciously in
making its decision.  The Zoning Board, in reviewing the Landmark Commission’s
decision, had before it the same evidence presented to the Landmark Commission,
including a transcript of the Landmark Commission’s hearing and the staff
report.  The Zoning Board denied the appeal and upheld the Landmark Commission’s
decision.  Likewise, the district court ruled that the Zoning Board did not
abuse its discretion.

The Property Owners argue on appeal that the Zoning
Board reasonably could have made only one decision because the only probative
evidence for the Zoning Board’s consideration came from the Reesby Report, in
which Reesby opined that the Main Structure could not be salvaged.  The
Property Owners claim that the Idriss Report provided no evidence to support
the Zoning Board’s decision because, among other things, Idriss did not address
the condition of the Main Structure in his report.  However, Idriss indicates
in his report that after an inspection of the property’s “structure,” as
comprised of the Main Structure and Additions, only the Additions appeared to
be deteriorated and that demolition of the Additions was feasible.  Idriss
indicated in the report that demolition of the Additions should be executed in
such a manner that would avoid damage to the Main Structure and that the Main
Structure should be fortified before such demolition.  In response to questions
from members of the Zoning Board, Idriss confirmed his opinion that the Main Structure
was salvageable, not unsafe, and would not collapse.  He clarified that his
report indicated that only the Additions posed unsafe conditions even though
his inspection covered both the Main Structure and the Additions.  The Zoning
Board also could have considered the City Letter, noting that inspections of the
“structure” on the property had occurred from which a city building inspector
deemed only the Additions to be unsafe and deteriorated. 

The Property Owners also assert that the Zoning Board
abused its discretion in considering the Idriss Report, alleging that the
report did not qualify as competent, admissible expert evidence.  The
rules of evidence apply in administrative hearings.  See Tex. Gov’t Code Ann. § 2001.081 (Vernon
2008) (allowing admission of otherwise inadmissible evidence under certain
conditions).  An agency has broad discretion in deciding whether to admit
expert testimony in an administrative hearing, and its decision will not be
overturned on appeal absent an abuse of discretion.  Austin Chevrolet, Inc.
v. Motor Vehicle Bd., 212 S.W.3d 425, 432 (Tex. App.—Austin 2006, pet.
denied).  Expert opinion testimony should be admitted if it will assist a trier
of fact in understanding the evidence or in determining a fact issue.  See Tex. R. Evid. 702.  In his report,
Idriss opined that only the Additions, and not the Main Structure, posed unsafe
conditions on the property.  The report may have been helpful in determining
whether the Main Structure posed a threat to public health or safety.  However,
the Zoning Board also could have considered the City Letter, noting only the
Additions’ unsafe structural issues during the City’s inspection of the
property on November 1 and 2, in reaching its decision.

For the Property Owners to prevail in their attack
the on legality of the Zoning Board’s order, they had to prove that the Zoning
Board could have reached but one decision and not the decision it made.  See
Vanesko, 189 S.W.3d at 771.  To the extent that the Reesby Report and the
Idriss Report may have contained conflicting evidence as to whether the Main
Structure posed an imminent threat to public health or safety, a factfinder
does not abuse its discretion in basing its decision on conflicting evidence.  See
Pick-N-Pull Auto Dismantlers, 45 S.W.3d at 341; Sw. Paper Stock, Inc.,
980 S.W.2d at 805.  Likewise, a legal presumption exists in favor of the
Zoning Board’s order, and if there is some evidence of substantive and
probative nature that supports the Zoning Board’s decision, there is no abuse
of discretion.  See Pick-N-Pull Auto Dismantlers, 45 S.W.3d at 341; Sw.
Paper Stock, Inc., 980 S.W.2d at 805.  

Having reviewed the entire record, we cannot say that
the Zoning Board abused its discretion in upholding the Landmark Commission’s
decision to deny the demolition permit.  See Pick-N-Pull Auto, 45 S.W.3d
at 340.  The evidence in the record demonstrates that there was some
substantive and probative evidence to justify the Zoning Board’s decision,
namely the City Letter noting the unsafe structural conditions of only the
Additions, the Idriss Report recommending demolition of only the deteriorated
Additions, and Idriss’s testimony at the Zoning Board hearing confirming his
opinion that the Main Structure was salvageable, not unsafe, and would not
collapse.  See id.; Board of Adjustments of City of Corpus Christi v.
Flores, 860 S.W.2d 622, 627 (Tex. App.—Corpus Christi 1993, writ denied). 
Therefore, the record reflects that the Zoning Board acted legally and
within its discretion in upholding the Landmark Commission’s decision.  See Vanesko,
189 S.W.3d at 773.  Likewise, because we conclude the Zoning Board acted
legally and within its authority, the district court did not abuse its
discretion in affirming the Zoning Board’s decision.  See Pick-N-Pull Auto,
45 S.W.3d at 341 (affirming the district court’s judgment).  Accordingly, we
overrule the Property Owners’ second and third issues.  

Due Process or Due Course of Law
Claims

            In their fourth
issue, the Property Owners contend that the procedures of the hearing conducted
by the Zoning Board denied the Property Owners due process and due course of
law.  Although the Property Owners raised these due-process claims in their pleadings,
these due-process claims are included among those claims that were severed by
the district court and made part of another case.  The due-process claims were
not presented to the district court on the writ granted for the appeal of the
Zoning Board’s ruling and, accordingly, are not included in this appeal of the
district court’s ruling determining whether the Zoning Board abused its
discretion in reaching its decision.  Any issues asserted as to these claims
would need to be asserted on appeal of those severed claims.  The Property
Owners’ due-process claims are not before this court.  We therefore overrule
the fourth issue.  

            Having
overruled all of the issues the Property Owners present on appeal, we affirm
the district court’s judgment.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

Panel consists of Justices Yates, Frost, and Brown.









[1]
See Tex. Loc. Gov’t Code. Ann.
§ 211.003(b) (Vernon 2008).





[2]
See Tex. Loc. Gov’t Code. Ann.
§ 211.008 (Vernon 2008).





[3]
Because we do not conclude the district court abused its discretion in severing
the claims, we do not reach the merits of the Property Owners’ arguments that
severance was prejudicial to the development of a fuller record.  





[4]
A board’s verified return must state concisely the pertinent and material facts
that show the grounds of the decision under appeal.  Tex. Loc. Gov’t Code Ann. §
211.011(d).





[5]
The Property Owners point to the following language in the Zoning Standards in § 29–80(i)
to support their position that the Landmark Commission had no authority to deny
the request for demolition: 

Nothing herein shall affect the
authority of the City of Galveston to regulate substandard buildings and
dangerous structures.  The Landmark Commission shall not deny a request for
demolition of a structure that has been condemned and is considered a safety
hazard.  However, the Galveston Landmark Commission may request that the
Building Standards Commission issue a thirty-day (30) delay order on a final
demolition order for the purpose of seeking an alternative to the demolition of
a structure designated as a Galveston landmark.

Galveston Zoning Standards§ 29–80(i). 
However, this language is inapplicable to the facts of this case because the
record reflects that Ewald, a City building inspector, testified before the
Landmark Commission that the property had not been referred to the City for
condemnation.  Furthermore, the Property Owners acknowledge in their appellate
brief that the building in question is not “designated as a Galveston
landmark.”  Likewise, because the property has not been “designated as historic
property,” the Property Owners’ reliance on section 214.0111 of the Texas Local
Government Code is misplaced.  See Tex.
Loc. Gov’t Code Ann. §
214.00111(f) (Vernon 2008) (governing preservation of substandard buildings as
historic property).