

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00202-CV

_____

PEDRAM AND KAROL FARAHNAK, Appellants

V.

CITY OF SOUTHLAKE BOARD OF ADJUSTMENT AND BRIAN AND MELISSA
REUKEMA, Appellees

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 20-6626-367

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

In this appeal from a judicial review of a municipal zoning determination, we are asked to decide whether the municipality's board of adjustment's determination contained any illegality and whether the reviewing court appropriately ruled on the merits of the municipal determination. We conclude that there was no illegality in the board's determination and that it was appropriately reviewed. Thus, we affirm the reviewing court's judgment.

## I. BACKGROUND

Southlake, Texas (the City), is a home-rule municipality that has established a board of adjustment (the Board) to determine applications for variances and specified special exceptions to the City's zoning ordinances. *See* Southlake, Tex., Southlake City Code, ch. I, § 1.06(a) (2021); Southlake, Tex., Land Dev. Code, Zoning §§ 44.1, 44.3, 44.12 (2021) [hereinafter Southlake Zoning];[1] *see also* Tex. Loc. Gov't Code Ann. §§ 54.004, 211.008(a), 211.009(a)(2).

### A. SPECIAL-EXCEPTION APPLICATION

Appellees Brian and Melissa Reukema own a residential lot in the City that is 41,385 square feet—less than one acre—and was, therefore, zoned in the SF-30

---

[1]The City's code of ordinances may be accessed at www.cityofsouthlake.com/307/Ordinances. The Farahnaks ask that we take judicial notice of the City's applicable ordinances in order to determine this appeal, which we do. *See* Tex. R. Evid. 204; *Gette v. State*, 209 S.W.3d 139, 143–44 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Hollingsworth v. King*, 810 S.W.2d 772, 774 (Tex. App.—Amarillo), *writ denied*, 816 S.W.2d 340 (Tex. 1991).

residential district.  *See* Southlake Zoning § 13.5(f); *see also* Tex. Loc. Gov't Code Ann. § 211.005.  The Reukemas' lot was the only SF-30 lot in their housing development. Appellants Pedram and Karol Farahnak are the Reukemas' southern neighbors; their lot is in the SF-1A residential district, which requires lots to be at least 43,560 square feet, i.e., one acre.  *See* Southlake Zoning § 11.5(f).

The zoning ordinances for the SF-30 residential district limit the total aggregate square footage of roofed accessory buildings to 750 square feet and impose a maximum lot coverage for all buildings to be 20% of the lot area.  *See id.* §§ 13.5(e), 13.5(j); *see also* Tex. Loc. Gov't Code Ann. §§ 211.003, 211.005.  The Reukemas' home is approximately 4,000 square feet, and they added a 396-square-foot accessory building and a 32-square-foot roofed chicken coop to their lot before this case arose.

In July 2020, the Reukemas submitted a special-exception application to the Board, accompanied by a plot plan, requesting an exception to the total size permitted for accessory buildings in order to build a 1,008-square-foot detached garage on the southeastern corner of their property, which was in their rear yard.  *See* Tex. Loc. Gov't Code Ann. §§ 211.008(a), 211.009(a)(2); Southlake Zoning §§ 44.3(c)(1), 44.12(2).  A detached garage is an authorized use for an accessory building in the SF-30 and SF-1A residential districts.  *See* Southlake Zoning § 34.1(e).  The proposed garage would not cause the Reukemas to violate the 20% coverage limit of 8,277 square feet.

## B. PUBLIC HEARING

The City notified six affected property owners[2] of the Reukemas' application, that the application requested an exception to the aggregate-size restriction for accessory buildings in the SF-30 residential district, and that the Board would hear the application in an August 13, 2020 public hearing. *See* Tex. Loc. Gov't Code Ann. §§ 211.007(c), 211.0075; Southlake Zoning § 44.3(c)(2); *see also* Tex. Gov't Code Ann. § 551.041. The Reukemas' western neighbor notified the Board that she was in "full support" of the request. The Farahnaks submitted a notification that they were opposed to the special-exception request:

> 1) The Proposed accessory building is located in full view in our front yard in front of our porch. No other property is subjected to this offensive, damaging view. 2) This condition without a doubt is self-inflecting [sic] by the purchase of seriously, development restricted property . . . . 3) Such variance would be [an] unprecedented challenge to the Zoning Ord. section 44.3(C) and (D)[, which allows the Board to grant special exceptions and terminate nonconforming uses].

At the hearing, Pedram stated that he was opposed to the garage not only based on the aggregate-size limit but also based on its proximity to his property line and its height. The Board noted that except for the 750-square-foot aggregate limit on accessory buildings, the Reukemas' proposed garage met all other ordinance requirements in the SF-30 residential district, such as height, setback, purposes, and architectural style. Thus, the Board's only question was whether the Reukemas should

---

[2]These property owners were notified because they were located within 200 feet of the Reukemas' lot.

be allowed "to go any further beyond the 750 square feet permitted." *See* Southlake Zoning § 44.12(2). The Board unanimously granted the Reukemas' special-exception application, which the meeting minutes specified had sought only an exception "for accessory buildings or structures of a size or aggregate size greater than that permitted to allow an approximately 1,008 square foot accessory building in addition to an existing . . . accessory building and . . . [a] chicken coop for a total of approximately 1,436 square feet of accessory buildings . . . on the property."

## C. JUDICIAL REVIEW

The Farahnaks filed a verified petition in a district court seeking a temporary restraining order to prohibit construction of the garage and pleading for a writ of certiorari for judicial review of the Board's decision because the Board allegedly had abused its discretion and exceeded its authority by approving the exception. *See* Tex. Loc. Gov't Code Ann. § 211.011(a), (c); Southlake Zoning § 44.9. The Board voluntarily filed a verified return (even though the reviewing court had not granted a writ of certiorari requiring the Board to do so) and a motion for summary judgment, arguing that the Board's decision was not an abuse of discretion because it "was made under appropriate guiding principles, and does not misinterpret the law." *See* Tex. Loc. Gov't Code Ann. § 211.011(c)–(d). The Farahnaks responded to the Board's motion.

The reviewing court set the summary-judgment motion and the Farahnaks' petition for a May 4, 2021 hearing. Before this hearing could be held, the Reukemas

5

began construction on the garage with the City's consent on March 23. The Farahnaks quickly filed an application for a temporary restraining order, a temporary injunction, and a permanent injunction on March 25. *See id.* § 211.011(c). In a separate "Certificate for Ex Parte Relief" filed four days later, the Farahnaks certified that they had notified the Reukemas of the application and that the Farahnaks would present their application to the court at a March 31 hearing, which the Reukemas agreed to attend. *See* Tex. R. Civ. P. 680–81.

At the March 31 hearing, the reviewing court noted that the Farahnaks' entitlement to injunctive relief was tied into "the writ for cert itself" and that they had not made a clear showing of an abuse of discretion by the Board. Thus, the reviewing court denied the Farahnaks' injunctive-relief requests and petition for judicial review. It did not expressly rule on the Board's summary-judgment motion.

In its resulting findings and conclusions, the reviewing court concluded that there had been no illegality in the Board's decision and that the court had not been required to "conduct a trial, hearing, or otherwise hear evidence before deciding whether or not to grant a petition for writ of certiorari." The Farahnaks filed a motion for new trial and argued that the March 31 hearing, which ostensibly had been limited to the injunctive requests, impermissibly went beyond that due-cause determination to the merits of their petition. *See* Tex. Loc. Gov't Code Ann. § 211.011(c). The reviewing court denied the motion.

The Farahnaks appeal from the reviewing court's judgment and argue in five issues[3] that this court may not have jurisdiction over their appeal, the reviewing court erred by determining the merits of their petition after the injunction hearing, the City impermissibly failed to give notice that the Reukemas' application included a height-variance request, and the reviewing court erred by denying their petition for judicial review. The Reukemas have not filed an appellate brief but the Board has.

## II. JURISDICTION

In their first appellate issue, the Farahnaks argue that the reviewing court's judgment may not be final, depriving this court of jurisdiction over their appeal, because the reviewing court did not expressly "affirm" the Board's decision. *Id.* § 211.011(f). Therefore, the Farahnaks argue that their claim for reversal of the Board's special exception may still be pending in the reviewing court. The Farahnaks recognize that the judgment's finality language—"all relief not expressly granted by the Final Judgment is **DENIED**"—would render the judgment final under well settled precedent; however, they assert that this precedent should yield to Section 211.011(f)'s provision that the reviewing court "may reverse or affirm, in whole or in part, or modify the decision that is appealed." *Id.* *See generally Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001) (holding "judgment issued without a

---

[3]The Farahnaks' issues are stated and numbered one way in the table of contents and a different way in the issues-presented portion of their brief. To ensure that we address the issues as they were substantively argued, we have followed the numbering and statement of the issues from the table of contents.

7

conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties").

The Board first argues that because the Farahnaks did not raise this argument in the reviewing court, they cannot raise it here. This is incorrect. A court's jurisdiction may be raised at any time and requires no preservation in the court below. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993).

But the Board is correct that the finality language in the judgment, which was in line with the reviewing court's finality statements at the hearing,[4] renders the judgment final. The judgment's language shows with "unmistakable clarity" that the judgment was final as to all claims and parties even though the judgment did not explicitly "affirm" the Board's determination. *Lehmann*, 39 S.W.3d at 192; *see also In re R.R.K.*, 590 S.W.3d 535, 541 (Tex. 2019) ("'Clear and unequivocal' language that reflects an intent to dispose of the entire case is given effect, but when there is doubt about finality, the record resolves the issue." (quoting *In re Elizondo*, 544 S.W.3d 824, 828 (Tex. 2018) (orig. proceeding))). Accordingly, we have jurisdiction over the appeal. We overrule issue one.

---

[4]At the hearing, the reviewing court clearly stated its intent to fully and finally dispose of the Farahnaks' substantive claims: "[T]his Court will announce today that, after considering the verified petition for judicial review by the application for cert, that cert will not issue and the writ is denied. And so this case is dismissed."

8

### III. SUFFICIENT NOTICE PROVIDED BY THE CITY

In their third issue, the Farahnaks contend that the City failed to give sufficient notice that the Reukemas had included a "stealth" height-variance request in their special-exception application. In their petition, the Farahnaks claimed that the City's notice "included a request only for a Special Exception related to total square footage" even though the proposed garage exceeded the City's fourteen-foot height limit for accessory buildings and would obstruct the Farahnaks' view.[5] *See* Southlake Zoning § 34.2(e).

Before determining the Reukemas' special-exception application, the Board was required to give 15 days' notice of the public hearing "in accordance with the procedures used in zoning cases." Southlake Zoning § 44.3(c)(2). Those procedures require the governmental body to give "written notice of each public hearing . . . to each owner . . . of real property within 200 feet of the property on which the change . . . is proposed." Tex. Loc. Gov't Code Ann. § 211.007(c). The details of this notice are not specified, and such notice need not be "complete and perfect in every respect." *City of Dall. v. E. Vill. Ass'n*, 480 S.W.3d 37, 41 (Tex. App.—Dallas 2015, pet. denied) (op. on reh'g). However, the notice "must be of such character to afford the recipient an opportunity to oppose the measure if he desires." *Id.*; *cf. City of San Antonio v. Fourth Ct. of App.*, 820 S.W.2d 762, 765 (Tex. 1991) (orig. proceeding)

---

[5]This allegation belies the Board's argument that the Farahnaks did not plead their lack-of-notice claim in their judicial-review petition.

(recognizing meeting notice under the Open Meetings Act is adequate if it is sufficiently specific to alert the general public to the topic to be considered). The City's notice here did just that: The Farahnaks were able to oppose the Reukemas' application, and Pedram raised the height issue at the public hearing. Additionally, the Board received detailed information about the calculated height of the proposed garage and discussed the issue with Pedram at the hearing. The City's notice, therefore, was sufficient. We overrule issue three.

## IV. JUDICIAL REVIEW OF BOARD'S DETERMINATION

### A. GOVERNING PRINCIPLES

Decisions of a zoning board of adjustment are subject to judicial review. *See* Tex. Loc. Gov't Code Ann. § 211.011; *City of Dall. v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006). To do so, an aggrieved person may file a verified petition no later than ten days after the board's decision. *See* Tex. Loc. Gov't Code Ann. § 211.011(a)(1), (b); *City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 249–50 (Tex. App.—San Antonio 2006, pet. denied).

The timely petition vests the reviewing court with subject-matter jurisdiction to hear and determine a claim that the board acted illegally. *See Tellez v. City of Socorro*, 226 S.W.3d 413, 414 (Tex. 2007); *Davis v. Zoning Bd. of Adjustment of City of La Porte*, 865 S.W.2d 941, 942 (Tex. 1993). This jurisdiction also allows the reviewing court to grant a restraining order if the petitioner shows "due cause" to stay the effect of the board's decision. Tex. Loc. Gov't Code Ann. § 211.011(c); *see Scott v. Bd. of Adjustment*,

10

405 S.W.2d 55, 56–57 (Tex. 1966). The reviewing court may grant a writ of certiorari directing the board to produce the record from the zoning determination, but the reviewing court is not required to do so. *See* Tex. Loc. Gov't Code Ann. § 211.011(c); *Davis*, 865 S.W.2d at 942 & n.3.

The reviewing court's only question is the legality of the board's decision, which inquires whether the board clearly abused its discretion. *See Vanesko*, 189 S.W.3d at 771; *City of San Angelo v. Boehme Bakery*, 190 S.W.2d 67, 70 (Tex. 1945). The board's decision is presumed legal and as long as some substantive and probative evidence exists to support the board's decision, the board cannot be found to have clearly abused its discretion. *See Ferris v. City of Austin*, 150 S.W.3d 514, 520 (Tex. App.—Austin 2004, no pet.); *Pick–N–Pull Auto Dismantlers v. Zoning Bd. of Adjustment of City of Fort Worth*, 45 S.W.3d 337, 340 (Tex. App.—Fort Worth 2001, pet. denied). The complaining party carries the burden in the reviewing court to establish that the board's decision was a clear abuse of discretion and, thus, was illegal. *Pick–N–Pull*, 45 S.W.3d at 340.

In determining legality, the reviewing court will consider the filings before the board and any evidence introduced before the reviewing court. *See Boehme Bakery*, 190 S.W.2d at 70; *Christopher Columbus St. Mkt. LLC v. Zoning Bd. of Adjustments of City of Galveston*, 302 S.W.3d 408, 416 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The reviewing court may refuse to hear any further evidence if the record of the board's proceedings supported its determination and, in fact, the reviewing court is

11

authorized to determine that further evidence is not necessary for the proper disposition of the matter. *See* Tex. Loc. Gov't Code Ann. § 211.011(e); *City of Dall. v. Fifley*, 359 S.W.2d 177, 181 (Tex. App.—Dallas 1962, writ ref'd n.r.e.).

Once the reviewing court makes a legality determination, the aggrieved party may seek appellate review of the adverse decision. 77 Tex. Jur. 3d *Zoning* § 260 (2022). Similar to the strictures imposed on the reviewing court, we may not substitute our judgment for that of the reviewing court or the board. *See Currey v. Kimple*, 577 S.W.2d 508, 511 (Tex. App.—Texarkana 1978, writ ref'd n.r.e.); *Skinner v. Reed*, 265 S.W.2d 850, 852 (Tex. App.—Eastland 1954, no writ). And we are bound by the reviewing court's findings and conclusions that are supported by the evidence. *See Moody v. City of Univ. Park*, 278 S.W.2d 912, 921 (Tex. App.—Dallas 1955, writ ref'd n.r.e.). We are to determine only whether the reviewing court's ruling was a clear abuse of its discretion. *See Boehme Bakery*, 190 S.W.2d at 70–71.

## B. RULING ON PETITION AFTER INJUNCTION HEARING

In their second issue, the Farahnaks argue that the reviewing court clearly abused its discretion by determining the merits of their judicial-review petition after the injunction hearing, which the reviewing court had not notified them would be determined, and by denying their motion for new trial raising this issue. The Farahnaks contend that based on the reviewing court's hearing notice, they were only prepared to establish due cause for an injunction and not illegality of the Board's decision.

But as we recited before, the reviewing court was not required to hear any further evidence regarding illegality if the record from the Board's proceeding supported the Board's determination or if the reviewing court determined that the record before it was sufficient to properly dispose of the petition. *See* Tex. Loc. Gov't Code Ann. § 211.011(e); *Fifley*, 359 S.W.2d at 181; *cf. Tellez v. City of Socorro*, 296 S.W.3d 645, 648 (Tex. App.—El Paso 2009, pet. denied) (recognizing that although reviewing court may hear additional evidence, it sits "only as a court of review" and may not conduct "a trial *de novo*"). The Board filed a return, which included its administrative record surrounding the Reukemas' application, and the reviewing court was authorized to determine the petition on the basis of that record if it concluded that further evidence was not necessary. Tex. Loc. Gov't Code Ann. § 211.011(c), (e); *Fifley*, 359 S.W.2d at 181; *cf. Boehme Bakery*, 190 S.W.2d at 70 ("In giving the [reviewing court the] power to take evidence it was clearly not intended to authorize the court to exercise that power just as if it were the board itself."). The Farahnaks' certificate that they would present their injunctive requests at a March 31 hearing does not somehow supersede or limit this authorization.

Further, because the reviewing court's inquiry was a legal one—whether the Board's determination contained an illegality—the reviewing court could make that determination on the basis of the record that was before the Board. *See Boehme Bakery*, 190 S.W.2d at 70 ("Whether or not the board abused its discretion is a question of

13

law."); *Currey*, 577 S.W.2d at 512 (holding illegality of board's order is "a question of law and not of fact"). We overrule issue two.

## C. RULING WITHIN REVIEWING COURT'S DISCRETION

In issue five, the Farahnaks argue that the Board abused its discretion (and its decision was thereby illegal) because (1) the Board failed to make the findings required by ordinance and had no evidence upon which to make one of those findings, (2) the Board miscalculated the proposed garage's height, and (3) a Board member's statements at the hearing revealed that the Board was not correctly applying the zoning ordinances to the application. These three deficiencies, the Farahnaks contend, render the reviewing court's subsequent legality determination an abuse of discretion. For the following reasons, we disagree and overrule issue five.

### 1. Authorized Special Exceptions

The Board is empowered by ordinance to grant a special exception only if the Board finds that (1) the special exception is permitted by ordinance; (2) the location of the proposed improvement is clearly defined in the application's concept plan or plot plan; and (3) the proposed special exception "is wholly compatible with the use and permitted development of adjacent properties either as filed or subject to such limitations and requirements as the [B]oard deems to be necessary to protect adjacent properties." Southlake Zoning § 44.3(c)(3). Further, a special exception regarding the size of an accessory building is to be based on four "review criteria":

14

    a. Compatibility of the materials proposed with the principal structures and the surrounding properties[,]

    b. Purpose of the accessory structure[,]

    c. Consistency of architectural style including roof structure[, and]

    d. Setback from adjoining properties and location on the subject property[.]

*Id.* § 44.12(2).  The Farahnaks argue that the Board failed to expressly make any of these findings and that even if the findings had been made in the Reukemas' favor, the compatible-use finding and the setback criterion would have been supported by no evidence based on Pedram's assertions at the public hearing.

## 2. Express Findings Not Required

The ordinance at issue, while mentioning governing "criteria" and necessary "find[ings]" for a special exception, does not require that the Board make express findings tracking the criteria and findings lists and does not require that any findings be included in the meeting minutes.  *Id.* § 44.3, 44.12(2).  Thus, the Board's failure to do so did not render its ultimate decision illegal.  *See Zoning Bd. of Adjustment of City of El Paso v. Knapp*, 618 S.W.2d 137, 140–41 (Tex. App.—El Paso 1981, no writ); *cf. Bd. of Adjustment of City of San Antonio v. Leon*, 621 S.W.2d 431, 436 (Tex. App.—San Antonio 1981, no writ) (holding Board's action in granting special exception void because ordinance expressly required findings to be made and required findings to be incorporated into the minutes, neither of which happened).  And we note that the

15

Board recognized at the hearing that it was governed by the criteria and specific findings in determining the application.

### 3. Some Evidence Supports Board's Decision

### a. Compatible use and setback

We also reject the Farahnaks' assertion that there was no evidence before the Board that would have allowed the compatible-use finding to have been made. Again, neither the reviewing court nor this court may reweigh or reassess the evidence placed before the Board in a review of its decision. *See Schreiber v. Bd. of Adjustment of City of Fort Worth*, No. 02-17-00107-CV, 2018 WL 360427, at *6 (Tex. App.—Fort Worth Jan. 11, 2018, no pet.) (mem. op.). Conflicting evidence does not equate to a clear abuse of the Board's discretion. *See id.* Instead, the Board appropriately exercises its discretion if there is some substantive and probative evidence in support of its decision. *See id.*

The Farahnaks contend that there was no evidence that the proposed garage would be compatible with the use and development of their adjacent property. They first rely on Pedram's testimony before the Board that he would be the only property owner who would "see at least 10 feet minimum exposed to the eye above the fence," which he asserted would be an "offensive and damaging view." But Pedram also told the Board that the view he currently had from his property—screening trees taller than the eight-foot fence—would not substantially change after the garage was built, which Melissa Reukema confirmed. Further, Melissa pointed out that although

16

Pedram stated that the garage would impede his front-porch view, the proposed garage would abut the Farahnaks' rear yard. This was some evidence supporting the Board's implicit decision that the proposed garage was not incompatible with the Farahnaks' use based on their impeded-view argument.

The Farahnaks also rely on Pedram's testimony that the proposed garage, situated ten feet from the property line between the Reukemas' and the Farahnaks' properties, would violate the forty-foot setback requirement for the SF-1A residential district. The ordinance the Farahnaks rely on to support their forty-foot-setback argument—Section 11.5(d)—provides that the property's "rear yard" must be at least forty feet. Southlake Zoning § 11.5(d). A rear yard is defined as a "yard extending across the rear of the lot between lot lines"; a setback is "the minimum horizontal distance between the front wall of any projection of the building . . . and the street line." *Id.* § 4.2. The rear-yard requirement is different from a setback. Even so, accessory buildings may be located ten feet from the property line if it is in the property's rear yard, as was the Reukemas' proposed garage. *Id.* § 34.2(a). Thus, there was no location violation that was incompatible with the Farahnaks' use of their property or that violated the setback criterion, which Board members recognized at the public hearing.

And we emphasize that the Reukemas' lot is not in the SF-1A residential district; thus, that residential district's regulations would not apply to the Reukemas' lot to the extent the regulations are different. The Farahnaks' attempts to impose SF-

17

1A's regulations on an SF-30 lot would essentially impose one residential district's regulations on a different, adjacent residential district. Such a result would require a property owner to not only comply with her residential district's regulations but also with any adjacent residential district's regulations. This is a bridge too far, and we decline to adopt the Farahnaks' interpretation of incompatible use. *See generally id.* § 1.1 (providing that zoning ordinances were established by considering "the character of each district and its peculiar suitability for the particular uses"). As one Board member stated to Pedram at the hearing,

> [Y]our situation is not unusual in the [C]ity . . . . There are a lot of parcels that have different zoning adjacent to each other. We've had in multiple through the [B]oard just recently where people have houses twice the size of a house directly behind them, because they're in different developments and different zones. It happens all the time.
>
> So your situation is not unusual. So there is no hardship for you that we can see from this, caused by [the Reukemas]. They bought a piece of property, just as you could have bought that property . . . and developed it yourself and have the same rights that they do.

### b. Height of proposed garage

The Farahnaks assert that the Board abused its discretion by granting the special exception because the Board's calculation of the height of the proposed garage did not follow the calculation provided by ordinance. Accordingly, the Farahnaks conclude that there was no evidence to support the reviewing court's determination that the Board's height conclusion was not an abuse of discretion. Accessory buildings are limited to "one story or fourteen feet (14') in height." *Id.* § 34.2(e).

18

Building height is defined as the "vertical distance above a reference datum measured to . . . the average height of the highest gable of a pitched or hipped roof." *Id.* § 4.2.

First, the Farahnaks did not raise the asserted incorrect calculation of height under the terms of the ordinance to the reviewing court. The Farahnaks complained in their petition that the proposed garage was two feet taller than that allowed by Section 34.2(e). At no point, however, did they raise in the reviewing court their appellate argument that the Board's calculation improperly applied the City's enacted metric—the average height of the highest gable. We cannot conclude that the reviewing court clearly abused its discretion in its review of the Board's action based on a mathematical argument that the Farahnaks did not raise to the reviewing court. *See* Tex. R. App. P. 33.1(a)(1); *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003); *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982); *Biddle v. Bd. of Adjustment, Vill. of Spring Valley*, 316 S.W.2d 437, 439–40 (Tex. App.—Houston 1958, writ ref'd n.r.e.), *disapproved of on other grounds by Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 431 n.3 (Tex. 2002); *cf. Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex. 1978) ("Parties are restricted on appeal to the theory on which the case was tried.").

Second, even if the incorrect-calculation argument were fairly raised, the administrative record shows that the Board considered the Farahnaks' height complaint under the measurements prescribed by ordinance. The presentation to the Board, given by the City's Principal Planner Richard Schell, included a diagram of the proposed garage showing that the lowest point of the highest gable was 12 feet and

19

that its highest point was 16 feet. Schell then informed the Board that under the ordinance defining building height, "the average height between the 12-foot and 16-foot dimensions equals the 14-foot maximum height permitted, which is average height." *See* Southlake Zoning § 4.2. After this presentation and after Pedram continued to insist that the garage's height would instead be sixteen feet, Board members stated that the Reukemas had met the height restrictions and that the height issue, therefore, was not before the Board. The calculation complied with the ordinance, which the Board accepted, and no variance or special exception to Section 34.2(e) was requested or required.[6] We cannot conclude that the reviewing court clearly abused its discretion by finding the evidence sufficient to support the Board's calculation or to support the Board's conclusion that height was not an issue because the proposed garage was compliant.

### c. Board member's statements at hearing

The Farahnaks next argue that two statements by a Board member at the hearing showed that the Board misapplied the zoning ordinances as a matter of law: (1) that compatible use was not "a question" for the Board because "[o]ther people in

---

[6]The Farahnaks also argue in their fourth issue that there was no evidence to support the reviewing court's finding that a height variance was presented to the Board. Whether we cast the Reukemas' application as a request for a variance or for a special exception, the height of the proposed garage was presented to the Board, and the Board found that it complied with Section 34.2(e). This was some evidence to support the reviewing court's finding that the proposed garage's height was presented to the Board. We overrule issue four.

that area have accessory buildings" and (2) that the Board could not reject the Reukemas' application because the Farahnaks' view was "not part of the zoning ordinance requirements that we have to look at." These isolated statements do not establish that the Board clearly abused its discretion by granting the Reukemas' special-exception application. We have already determined that there was some evidence to support the Board's determination that the proposed garage was not incompatible with the Farahnaks' use of their property. The Board member's statement does not negate that evidence supporting the Board's decision. And the Board member's statement that the Farahnaks' view was not part of the ordinance requirements was technically correct. An adjacent property owner's view is not mentioned in the ordinances relating to special exceptions or accessory buildings other than an implicit inclusion in the compatible-use requirement, which we have concluded was supported by the evidence, and in the height limit, which we have concluded was complied with. *See* Southlake Zoning §§ 4.2, 34.2, 44.3(c), 44.12(2).

## V. CONCLUSION

The Farahnaks have not met their burden to show that the Board's determination or the reviewing court's ruling on the petition for judicial review were clear abuses of discretion. Accordingly, we affirm the reviewing court's final judgment. *See* Tex. R. App. P. 43.2(a).

21

/s/ Brian Walker

Brian Walker
Justice

Delivered:  February 10, 2022